Argued and submitted September 23, 2008, reversed and remanded on plaintiff's
claims under ORS 659A.030(1)(b) and ORS 659A.865; otherwise affirmed
April 15, 2009

Coleen CLEMENTE,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON,
*Defendant-Respondent.*

Marion County Circuit Court
05C11287; A135189

206 P3d 249

Marianne Dugan argued the cause and filed the briefs for appellant.

Keith J. Bauer argued the cause for respondent. With him on the brief was Parks Bauer Sime Winkler & Fernety, LLP.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

Plaintiff brought this action against her former employer, the Oregon Department of Corrections (DOC), alleging, among other things, discriminatory treatment based on her gender, ORS 659A.030;[1] retaliation for having lodged a gender discrimination complaint, ORS 659A.865;[2] and intentional infliction of emotional distress (IIED). Defendant filed a motion for summary judgment, arguing that the discrimination and retaliation claims were precluded by a federal court judgment against plaintiff on the same claims, and that the facts, even as interpreted most favorably to plaintiff, did not support a *prima facie* case of IIED. The trial court granted defendant's motion, and plaintiff appeals. We conclude that defendant never asserted an appropriate affirmative defense to the discrimination and retaliation claims and that, for that reason, they are not precluded. We also conclude, however, that the court did not err in dismissing the IIED claim. We therefore reverse and remand on the discrimination and retaliation claims and otherwise affirm.

We begin with the discrimination and retaliation claims. The facts relative to those claims are procedural and undisputed. We therefore review the trial court's ruling for legal error. ORCP 47 C.

Plaintiff brought an action against DOC in federal district court for gender discrimination and retaliation under both federal and state law, and for IIED under state law, among other claims. The district court granted DOC's motion to dismiss plaintiff's state law claims on the ground that the Eleventh Amendment barred litigation of those claims in federal court. Ultimately, on July 7, 2006, the district court also granted DOC's motion for summary judgment on plaintiff's federal claims and issued an opinion to that effect.

---

[1] ORS 659A.030(1)(b) provides that "[i]t is an unlawful employment practice: For an employer, because of an individual's * * * sex, * * * to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

[2] ORS 659A.865 provides that "[a] respondent named in a [sex discrimination] complaint * * * may not, with the intention of defeating a purpose of this chapter, take any action that deprives the person filing the complaint of any services, real property, employment or employment opportunities sought in the complaint."

■■     Meanwhile, plaintiff had refiled her state law claims in state court. On September 5, 2006, approximately two months after the federal court issued its decision granting DOC's motion for summary judgment, defendant filed a motion for summary judgment in this state court proceeding. In the motion, defendant argued for dismissal of plaintiff's IIED claim because the actions and omissions that it alleged were not intentional and, in any event, they did not rise to the level of outrageousness that is necessary to support an IIED claim. Defendant also asserted, for the first time, that plaintiff's gender discrimination and retaliation claims were precluded by the judgment of dismissal in federal court. In a letter opinion after a hearing, the trial court granted defendant's motion on each of plaintiff's claims, ruling as follows:

"*Intentional Infliction of Emotional Distress*

"Plaintiff * * * misread[s] or mistate[s] *McGanty* [*v. Staudenraus*, 321 Or 532, 544, 901 P2d 841 (1995)], the tort requires intentional, not reckless infliction of emotional distress. Defendant's motion is granted as to this claim.

"*Claim Preclusion*

"To the extent that Defendant is required to plead the affirmative defense of claim preclusion, the Court will allow such amendment. Throughout the life of this case, this Court understood (and it was plain to Plaintiff) that there would be motions filed and defenses raised should the Federal Court grant any or all of Defendant's motions filed therein. There has been notice and this Court finds no waiver nor prejudice to Plaintiff by Defendant's motion. Defendant's memorandum is persuasive.

"The Court further finds Defendant's memoranda persuasive on the issue of claim preclusion. The U.S. District Court judgment is now final and the elements of claim preclusion have been satisfied."

Defendant concedes at the outset that claim preclusion does not apply under the facts of this case. We agree and accept that concession. To prevail on the basis of claim preclusion, a defendant must establish that the claim sought to be precluded "is of such a nature as could have been joined in the first action." *Rennie v. Freeway Transport*, 294 Or 319,

323, 656 P2d 919 (1982). Here, plaintiff attempted to bring the discrimination and retaliation claims in federal court and was prevented from doing so by defendant's successful invocation of an Eleventh Amendment defense.

Defendant argues, however, that we should affirm the trial court's ruling on the unpreserved, alternative ground that plaintiff's claims were barred by *issue* preclusion.

> "Issue and claim preclusion principles determine the 'binding effect on a subsequent proceeding of a final judgment previously entered in a claim.' *Drews v. EBI Companies*, 310 Or 134, 139, 795 P2d 531 (1990). Although they are related doctrines, they are distinguishable. Claim preclusion prohibits a party from relitigating a cause of action against the same defendant involving the same factual transaction as was litigated in the previous adjudication. Issue preclusion, on the other hand, prevents relitigation of a legal or factual issue. *Id.* at 139-40."

*Shuler v. Distribution Trucking Co.*, 164 Or App 615, 621, 994 P2d 167 (1999), *rev den*, 330 Or 375 (2000). Defendant urges us to consider the issue preclusion argument under the so-called "right for the wrong reason" doctrine, which allows an appellate court to affirm the ruling of a trial court on a basis other than that upon which the trial court relied if the evidentiary record is sufficient to support the proffered alternative basis for affirmance. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). That requires:

> "(1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below."

*Id.* Defendant contends that plaintiff's federal and state complaints, combined with the district court's opinion, each of which was before the trial court and is in the record on appeal, establish that the federal district court granted summary judgment on plaintiff's discrimination and retaliation

claims and, in doing so, concluded that defendant had not discriminated against plaintiff on the basis of her gender or retaliated against her for her discrimination complaints; that information, according to defendant, is sufficient to establish whether plaintiff is precluded from relitigating those issues in state court. Plaintiff replies that the record in this case "would have differed materially had issue preclusion been raised," but she provides no concrete examples of those differences, and we can think of none.

██ ██ Nonetheless, we conclude that application of the "right for the wrong reason" doctrine is not appropriate in this case. In *Outdoor Media*, the court reiterated and reaffirmed the doctrine.

> " 'We are reluctant to reverse a trial court on grounds or theories other than those on which a case is tried and decided unless the parties have been afforded an opportunity to submit further briefs or argument. The considerations are different in cases in which we affirm a trial court. In such cases, when the trial court arrived at a correct result, but on grounds different than those which, in our opinion, are more proper as the basis for such a result, we believe that it is not improper to affirm the trial court; *provided, of course, that the pleadings are sufficiently broad* and there is sufficient evidence in the record * * *.' "

*Id.* (quoting *State Farm Fire v. Sevier*, 272 Or 278, 298, 537 P2d 88 (1975)) (emphasis added). Although the emphasized portion refers to "pleadings," we take it to encompass the various mandatory issue-framing provisions in the rules of civil procedure. Thus, for example, in *Fox v. Collins*, 213 Or App 451, 460, 162 P3d 998, *rev den*, 343 Or 223 (2007), we rejected the defendant's argument that we could consider a statute of limitations defense raised for the first time on appeal, because the defendants were required to raise the defense "by pleading it in their answer or by moving to dismiss on that basis." *Outdoor Media*, we held, did not apply:

> "Under *Outdoor Media*, we may—as a matter of discretion—affirm a trial court ruling on an alternative basis when certain conditions are met. * * * The court may not *sua sponte* consider a statute of limitations defense that is not pleaded. *See Francke v. Gable*, 121 Or App 17, 20, 853 P2d 1366 (1993) (trial court's dismissal of action on its own

> motion on basis of unasserted, waivable defense is plain error); *Palmer v. State of Oregon,* 121 Or App 377, 380, 854 P2d 955 (1993), *aff'd,* 318 Or 352, 867 P2d 1368 (1994) (declining to affirm post-conviction court's dismissal of plaintiff's petition for post-conviction relief on alternative basis that it was untimely where state waived statute of limitations by failing to raise it by answer or motion to dismiss the petition); *cf. Waddill v. Anchor Hocking, Inc.,* 330 Or 376, 384, 8 P3d 200 (2000) (because defense of failure to state a claim under ORCP 21 G(3) is waivable by party's failure to timely assert it, the appellate courts will not consider legal sufficiency of claim on appeal unless such a challenge was raised at trial). We therefore reject defendants' statutory arguments as an alternate ground for affirmance."

*Fox,* 213 Or App at 461. Issue preclusion is an affirmative defense and, as such, it must be "set forth" in the responsive pleading. ORCP 19 B. It never was, even after the court permitted defendant to amend its answer. Nor was it raised in defendant's motion to dismiss or its motion for summary judgment. We therefore lack authority to consider it on appeal.

■  We can, however, consider defendant's argument that we should affirm the trial court's dismissal of plaintiff's claim for IIED on a basis that the trial court did not rely on. At trial, the parties recognized that, to prevail on an IIED claim, plaintiff had to establish that defendant acted with the requisite intent, that defendant's acts were an extraordinary transgression of the bounds of socially tolerable conduct, and that the acts inflicted damage. *McGanty,* 321 Or at 543. All of those issues were properly before the trial court. The parties developed a full record. The court decided the issue based on the intent element, ruling that plaintiff had to prove intentional acts but had proved only reckless ones. Much of the argument on appeal focuses on that issue. We do not reach it. Rather, we conclude that, regardless of the intent behind them, defendant's acts do not qualify as an extraordinary transgression of the bounds of socially tolerable conduct.

Presuming, as did the parties, that the acts alleged in plaintiff's complaint occurred, the relevant facts are as follows. Plaintiff, an attorney, was employed by DOC as a hearings officer in Umatilla. In December 2002, she requested a

transfer to Salem, outside the region of her immediate supervisor, Scrogham, whom she believed had been discriminating against her because of her gender. That request was denied. In February 2003, plaintiff reported to DOC that she was experiencing discrimination. In particular, she reported that (1) DOC paid her "less because of her sex than a male who was hired after she was for the same position doing the same duties and having the same responsibilities"; (2) "Scrogham provid[ed] documents to the male hearings officer for a state-wide hearings officers['] meeting, but [did] not provid[e] them to [her]"; (3) "Scrogham den[ied her] request for a power point presentation * * * which other hearings officers had been provided" and "specifically wrote in a directive to all staff NOT to provide [it] to [her] because she might pass it on [to other women]"; (4) "Scrogham falsely accus[ed] her[,] but never males[,] of mistakes that were made by others" and then failed to "correct the wrong impression he had given to [her] co-workers regarding his false accusations"; and (5) "Scrogham permitt[ed] a male hearings officer to drive home in a state car from an out-of-town state-wide meeting, but then advis[ed her] that she had created some unknown liability for [DOC] by driving an even shorter distance in her own car from the same meeting." (Capitalization in original.)

After filing that report, plaintiff met with Prinslow, the DOC Inspector General, and again requested a transfer. DOC approved her request in April 2003, effective July 1 of that year. In May, plaintiff requested permission to attend a meeting and to conduct hearings in Salem in order to minimize her use of vacation leave while making necessary arrangements for her relocation; she also requested to see her new office. DOC denied those requests.

Shortly after plaintiff's transfer, Prinslow told her that the hearings section had undergone reorganization and that Scrogham would again directly supervise her. Plaintiff experienced extreme stress and anxiety as a result of this news and took medical leave beginning August 4, 2003.

She returned to work on October 24, 2003, having exhausted her available leave. One week later, during a meeting, Scrogham approached her and directed her to sign time sheets documenting the medical leave that she had

taken; she had to lean between two male coworkers in order to sign while approximately six male coworkers watched. After that meeting, Scrogham telephoned plaintiff to inform her that she would be allowed 1.5 hours of travel time to and from the meeting; plaintiff later learned that her coworkers had been allowed more time. She complained, and Scrogham adjusted the time allotment to reflect the amount allotted to her coworkers.

■■■■■ Whether conduct amounts to an actionably outrageous transgression of social norms is a fact-specific, case-by-case determination. *Lathrope-Olson v. Dept. of Transportation*, 128 Or App 405, 408, 876 P2d 345 (1994). Despite the fact that deciding the contours of social norms is precisely the sort of inquiry that is appropriately undertaken by a jury, in the context of an IIED claim, the court, functioning as a gatekeeper, performs that role in the first instance. *Pakos v. Clark*, 253 Or 113, 132, 453 P2d 682 (1969); *House v. Hicks*, 218 Or App 348, 358, 179 P3d 730, *rev den*, 345 Or 381 (2008). Although the inquiry necessarily involves fact-matching, some general principles emerge from the cases. In plaintiff's favor, for example, the courts are more likely to consider behavior outrageous if it is inflicted on the more vulnerable partner in a "special relationship" such as employer-employee. *E.g.*, *Babick v. Oregon Arena Corp.*, 333 Or 401, 413-14, 40 P3d 1059 (2002). By the same token, however, and militating in favor of defendant, managerial decisions that might give rise to conventional employment-related actions do not necessarily "qualify as intentional infliction of severe mental distress" unless they are also "the kind of aggravated acts of persecution that a jury could find beyond all tolerable bounds of civilized behavior." *Hall v. The May Dept. Stores*, 292 Or 131, 139, 637 P2d 126 (1981), *abrogated on other grounds by McGanty*, 321 Or 532.

■■■■ In fact, we find that the language from *Hall* is ultimately persuasive. In every case in which this court or the Supreme Court has allowed an IIED claim asserted in the context of an employment relationship to proceed to a jury, the employer engaged in conduct that was not only aggravating, insensitive, petty, irritating, perhaps unlawful,[3] and

---

[3] The fact that an act is unlawful is relevant in determining whether it is an actionable transgression for purposes of IIED, but it is not dispositive. *House v.*

mean—it also contained some further and more serious aspect. In some cases, the employer engaged in, or credibly threatened to engage in, unwanted physical contact of a sexual or violent nature. *E.g.*, *Lathrope-Olson*, 128 Or App at 407-08; *Franklin v. PCC*, 100 Or App 465, 471-72, 787 P2d 489 (1990). Employers in other cases repeatedly used derogatory racial, gender, or ethnic slurs, usually accompanied by some other aggravating circumstance. *E.g.*, *Whelan v. Albertson's, Inc.*, 129 Or App 501, 504-06, 879 P2d 888 (1994); *Franklin*, 100 Or App at 471-72. In yet other situations, the employer exposed the plaintiff to actual physical danger. *E.g.*, *Babick*, 333 Or at 413-14; *MacCrone v. Edwards Center, Inc.*, 160 Or App 91, 100-01, 980 P2d 1156 (1999), *vac'd on other grounds*, 332 Or 41, 22 P3d 758 (2001). In *Schoen v. Freightliner LLC*, 224 Or App 613, 615-20, 629, 199 P3d 332 (2008), the employer repeatedly subjected the plaintiff to verbal abuse, forced her to do work from which she was medically exempted, and forced her to engage in illegal conduct.

■      In the present case, no such extraordinarily outrageous aggravating factors occurred. Plaintiff was not verbally, sexually, or physically abused or harassed. Nobody engaged in name-calling. She was not exposed to violence, nor was she repeatedly and viciously ridiculed. At most, she was subjected to an insensitive, mean-spirited supervisor who might have engaged in gender-based, discriminatory treatment, but in this case, that treatment by itself did not amount to *"aggravated* acts of *persecution* that a jury could find beyond all tolerable bounds of civilized behavior." *Hall*, 292 Or at 139 (emphasis added). We therefore conclude that the court did not err in dismissing plaintiff's IIED claim.

Reversed and remanded on plaintiff's claims under ORS 659A.030(1)(b) and ORS 659A.865; otherwise affirmed.

---

*Hicks*, 218 Or App 348, 359, 179 P3d 730, *rev den*, 345 Or 381 (2008). Although one court has held that defendant's acts in this case were not unlawful, the issue, as discussed above, has not been definitively decided in this action.