Argued and submitted October 7, 2014, reversed and remanded
October 14, 2015

WALL STREET
MANAGEMENT & CAPITAL, INC.,
a Florida corporation,
*Plaintiff-Appellant,*

*v.*

Kent L. CRITES
and Shannon F. Piel,
Co-Personal Representatives of
the Estate of Elmer L. Crites,
*Defendants-Respondents.*

Polk County Circuit Court
10P10557; A151512

360 P3d 673

Thomas C. Patton filed the briefs for appellant.

Brian R. Talcott argued the cause for respondents. With him on the brief was Dunn Carney Allen Higgins & Tongue LLP.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

**HADLOCK, J.**

This case involves a contract purportedly signed by defendant[1] that guaranteed the repayment of certain loans made by plaintiff to defendant's son. After defendant's son failed to pay his debt, plaintiff brought this action against defendant based on the guaranty. Defendant quickly moved for summary judgment, arguing that the guaranty was not an enforceable contract. Defendant first maintained that someone forged his signature on the guaranty. Defendant also argued that, even if he had signed the guaranty, it still would not be enforceable, because the signed guaranty was merely an offer to form a contract and plaintiff never communicated his acceptance. The court granted defendant's motion for summary judgment based on its conclusion that there was no credible evidence that defendant had signed the guaranty. Plaintiff appeals and argues that the trial court erred because there was a genuine issue of material fact as to whether the signature on the guaranty was defendant's. Defendant responds that the trial court ruled correctly on the issue of the signature and that, even if it did not, plaintiff's failure to notify defendant that it was accepting the guaranty provides an alternative basis for affirmance. For the reasons that follow, we reverse and remand.

Because the trial court granted defendant's motion for summary judgment, we state the "facts and all reasonable inferences that may be drawn from them in the light most favorable to plaintiff, the nonmoving party." *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 332, 83 P3d 322 (2004). We omit discussion of hearsay evidence to which defendant properly objected during the summary judgment proceedings.

Plaintiff, Wall Street Management & Capital, Inc., is a Florida corporation that provides financial management and consulting services to businesses. Jim Schnorf is Wall Street Management's president and sole shareholder. In 2005, Schnorf was introduced to defendant's son, Scott Crites, who was interested in obtaining funding to finance

---

[1] Defendant Elmer Crites died during the pendency of this litigation. For the sake of clarity, we refer to both defendant and defendant's estate as simply "defendant."

an expansion of his business, Breakfast Club of America (BCA). Subsequently, Scott Crites hired Schnorf as a consultant to, among other things, help identify possible funding sources. The working relationship between Scott Crites and Schnorf became close. First, Scott Crites decided to expand the scope of Wall Street Management's consulting services and, eventually, he hired Schnorf as an individual employee of BCA. During the first half of 2005, Wall Street Management made several loans to BCA.

By August 2005, however, BCA was apparently having trouble securing additional loans—the company's finances had deteriorated and it was having trouble making payroll. In response, Schnorf (acting on BCA's behalf) attempted to secure additional business funding from several banks. During the course of the negotiations with the banks, Schnorf and Scott Crites discussed obtaining a loan guaranty from Scott's father, defendant Elmer Crites. Ultimately, however, they were unable to obtain the bank loans.

The parties dispute what happened next. According to plaintiff, Schnorf stated that Wall Street Management would not extend further loans to BCA unless those loans were guaranteed by someone other than Scott Crites. After BCA was unable to obtain a bank loan, Schnorf made the following offer to Scott Crites: Wall Street Management would loan additional money to BCA on the condition that defendant guarantee the loans. In plaintiff's version of events, Scott Crites was amenable to that idea and indicated that his father would be willing to act as a guarantor. Plaintiff prepared a guaranty contract for defendant to sign. In September, Scott Crites traveled from Florida to Oregon to visit his father. Scott Crites then returned to Florida and presented Schnorf with a guaranty signed "Elmer L. Crites." Although the guaranty was drafted with a signature block to be signed by a notary public, the document was not notarized. In addition, the document was not dated when Schnorf received it. Schnorf testified in his deposition that he asked Scott Crites what date to write next to defendant's signature. Based on Scott Crites's response, Schnorf wrote September 19, 2005, on the document; he did that in Scott Crites's presence.

Defendant tells a different story. Defendant claims that he knew almost nothing about his son's business dealings. In his deposition testimony, defendant agreed that his son visited him in Oregon in September of 2005, but defendant denied that they had any discussions about signing a guaranty. In fact, defendant denied ever having discussed the idea of a business loan with Scott Crites.

The parties agree that Wall Street Management extended additional financing to BCA via a series of amendments to an existing loan agreement. The first of those amendments is dated September 19, 2005. Plaintiff did not contact defendant to inform him of those amendments; Schnorf assumed that Scott Crites would keep his father informed about those developments.

Schnorf and defendant did eventually meet, but only after the loans at issue were made. In December 2005, defendant traveled to Florida to visit his son. During that visit, Schnorf met defendant at a party at Scott Crites's house. At that meeting, Schnorf testified that he thanked defendant for "helping his son with his business and his loan." Schnorf remembers that defendant replied, "'Always willing to help my son,' or something like that." According to his affidavit, Schnorf claims that "[a]t no point during his visit to Florida did [defendant] question or indicate that he did not have knowledge of his personal Guaranty obligations." Defendant denies that that conversation took place.

In 2007, BCA filed for bankruptcy without having fully repaid the loans to plaintiff. Subsequently, plaintiff filed suit in federal bankruptcy court in the State of Florida, claiming that those loans were not dischargeable in bankruptcy because Scott Crites had obtained them through false representation. *See* 11 USC § 523(a)(2)(A). Defendant was not a party to that proceeding. Ultimately, the bankruptcy court found that the loans were dischargeable. Plaintiff then brought the present action in Oregon seeking to collect the disputed funds from defendant based on his alleged status as the guarantor of the loans.

Before trial, defendant moved for summary judgment arguing that, for two reasons, the guaranty was not enforceable against defendant. First, defendant argued that

plaintiff had failed to introduce any evidence tending to prove that defendant signed the agreement. Second, defendant argued in the alternative that, even if he had signed the guaranty, it would not be a binding contract. That was so, according to defendant because, under the circumstances of this case, the signed guaranty would merely be an offer to enter into a guaranty agreement. Defendant argued that plaintiff could not have accepted that offer because, even under plaintiff's version of events, there is no evidence that plaintiff ever directly communicated its acceptance to defendant or that it informed defendant that it had issued any new loans to Scott Crites.

With respect to defendant's first argument, he emphasized the following facts: (1) Schnorf did not witness the guaranty being signed, (2) the guaranty is not notarized, (3) Schnorf, rather than defendant, wrote a date on the guaranty, and (4) defendant denies that he signed the guaranty. With respect to the physical characteristics of the signature itself, defendant's motion states:

> "Defendant has provided plaintiff with a number of handwriting exemplars. It is undisputed that the signature appearing on the Guaranty is materially different than the signature appearing on the handwriting exemplars. Mr. [Elmer] Lew Crites testified that, at all time relevant, he signed his name 'E. L. Crites,' which is how his signature appears on the handwriting exemplars. However, the Guaranty at issue here was signed 'Elmer L. Crites.' *Mr.* [Elmer] *Lew Crites has not signed his name that way since high school, approximately 70 years ago.*"

(Citations omitted; emphasis added.) Defendant attached to his motion copies of personal checks that were signed "E. L. Crites."

Plaintiff responded by arguing that summary judgment was not appropriate because there was a genuine issue of fact as to whether the signature was authentic. In response to defendant's assertion that he always signs his name "E. L. Crites," plaintiff noted that defendant had signed his name "Elmer L. Crites" on at least two affidavits that were prepared for the present case. Plaintiff's attorney also filed an affidavit in which he averred that he had "retained a duly

qualified handwriting expert who will testify that there are multiple significant similarities between the limited handwriting exemplars provided by defense counsel and the signature on the Guaranty."

Defendant's second argument was based on *Balfour, Guthrie & Co. v. Knight*, 86 Or 165, 167 P 484 (1917). According to defendant, that case holds that a signed guaranty is merely an offer to form a contract, rather than an enforceable agreement, when the guarantor does not receive notice of acceptance and three additional circumstances are present. Those circumstances, defendant asserted, are that the guarantor signs the instrument and (1) the guarantor has not received a prior request from the beneficiary to do so; (2) the beneficiary has not personally witnessed the guarantor sign the document; and (3) there is no consideration flowing between the guarantor and the beneficiary. Defendant argued in his summary judgment motion that all three elements were present in this case.

Plaintiff responded by arguing that consideration had flowed between the guarantor (defendant) and the beneficiary (plaintiff) because the guarantor "agreed to forebear collection of past due amounts as consideration for continuing to extend credit to Scott Crites and his businesses." Plaintiff also responded that Schnorf "believed that Scott Crites had conveyed notice of acceptance to" defendant. In support of that latter assertion, plaintiff pointed to Schnorf's deposition, in which he testified that defendant had visited Florida several months after plaintiff provided the loans to Scott Crites. During that visit, Schnorf asserted, plaintiff had thanked defendant for "helping his son with his business and his loan." Schnorf also provided an affidavit in which he claimed that he "instructed Scott Crites to confirm the agreement with his father, defendant Crites."

The trial court granted the motion for summary judgment on the first basis, concluding, among other things, that "[t]here is no credible evidence that Elmer L. Crites signed the guaranty attached to the complaint." Plaintiff appeals and largely reprises the arguments that it raised in opposition to defendant's motion for summary judgment. In response, defendant first argues that the trial court

correctly granted the motion because "Elmer Crites denied having ever signed the guaranty, and plaintiff presented no admissible evidence to the contrary to raise a triable issue." Defendant also attacks plaintiff's ORCP 47 E affidavit; defendant argues that the affidavit does not meet the requirements of ORCP 47 E and that the expert's testimony that "multiple significant similarities between the limited handwriting exemplars provided by defense counsel and the signature on the Guaranty" is not sufficient to establish a genuine issue of fact.

Summary judgment is appropriate when "the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." ORCP 47 C. There is no genuine issue as to a material fact when "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C. Once a motion for summary judgment is filed, "[t]he adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial." ORCP 47 C. As the Supreme Court has emphasized, however, the adverse party's burden of production extends only to those issues actually raised by the motion. In other words, the adverse party has no obligation to prove that there is a factual dispute with respect to an issue that has not been raised by the party seeking summary judgment. *Two Two v. Fujitec America, Inc.*, 355 Or 319, 326, 325 P3d 707 (2014). Furthermore, "[e]ven if the facts are undisputed, if the inferences arising from them are susceptible to more than one reasonable conclusion, summary judgment should not be granted." *Van Osdol v. Knappton Corporation*, 91 Or App 499, 502, 755 P2d 744, *rev den*, 306 Or 528 (1988).

Plaintiff acknowledges that defendant denies signing the guaranty and that there is no evidence that anyone witnessed defendant doing so. On the other hand, defendant's own testimony establishes that Scott Crites traveled to visit defendant in Oregon around the time that defendant is alleged to have signed the guaranty. There is, therefore,

evidence from which a reasonable juror could conclude that it is at least physically possible for defendant to have signed the guaranty. The first issue presented by this case, therefore, reduces to the question of whether a genuine issue of material fact exists about the authenticity of the signature on that document.

With respect to that question, defendant's summary judgment motion reduces to a contention that the guaranty was clearly forged because defendant always signs his name "E. L. Crites" and the signature on the guaranty reads "Elmer L. Crites." Defendant's summary judgment motion does not identify any other way in which the signature on the guaranty might differ in appearance from defendant's own signature. Plaintiff responded to defendant's argument by providing affidavits from December 2008 and March 2009 that defendant indisputably had signed as "Elmer L. Crites." In addition, the summary judgment record includes both those authentic signatures as well as the contested signature on the guaranty. A reasonable factfinder could compare those signatures and conclude that the signature on the guaranty was defendant's. *See State v. Park*, 140 Or App 507, 512, 916 P2d 334, *rev den*, 323 Or 690 (1996) (a factfinder's ability to compare authenticated and disputed signatures was sufficient to "permit a trier of fact to conclude that [a particular person's] signature [was] on the letter"); *see also* OEC 901 (a document may be authenticated by evidence that is "sufficient to support a finding that the matter in question is what its proponent claims[,]" including "[c]omparison by the trier of fact or by expert witnesses with specimens which have been authenticated").[2] Given that

_____

[2] We observe that plaintiff's attorney filed an affidavit in which he stated that he had retained a qualified handwriting expert who is able to testify about "multiple significant similarities between the limited handwriting exemplars provided by defense counsel and the signature on the Guaranty." Defendant argues that the affidavit was insufficient, standing alone, to defeat its summary judgment motion. Defendant claims that plaintiff intended to offer that affidavit under ORCP 47 E, and he argues that the affidavit does not conform to the requirements of that rule because it does not recite that plaintiff's expert will testify "to admissible facts or opinions creating a question of fact." ORCP 47 E. Defendant also argues that expert testimony that there are significant similarities between the genuine and disputed signatures "is not the same as providing an opinion that the signature on the guaranty is that of Elmer Crites." We do not reach the issue of whether the affidavit regarding expert testimony, standing

evidence, defendant has not demonstrated that no objectively reasonable juror could conclude that the signature on the guaranty is genuine. The trial court erred by granting defendant's summary judgment motion on that basis.

We turn to defendant's second argument, which requires us to consider whether plaintiff's failure to notify defendant that it had accepted the signed guaranty provides us with an alternative basis to affirm the trial court's judgment. Defendant argues that, under the Oregon Supreme Court's 1917 *Balfour, Guthrie & Co.* decision, plaintiff was required to notify him that it had accepted his offer to guarantee his son's debts. Defendant further argues that the record is devoid of any evidence that plaintiff did so.

The circumstances in *Balfour, Guthrie & Co.* closely match the circumstances in the present case. *Balfour, Guthrie & Co.* involved a guaranty agreement that was meant to help a person named G. R. Knight obtain credit for his feed store from the plaintiffs. 86 Or at 171. The plaintiffs agreed to extend credit to G. R. Knight on the condition that any credit would be guaranteed by a third party. *Id.* The plaintiffs expressed a willingness to accept, among others, the defendant's father as a guarantor. *Id.* The plaintiffs then prepared a guaranty contract and delivered it to G. R. Knight, who then delivered it to his father. *Id.* After he obtained his father's signature, G. R. Knight returned the signed document to the plaintiffs. *Id.* Relying on that document, the plaintiffs sold merchandise to G. R. Knight on credit. *Id.* at 167. When G. R. Knight failed to pay for that merchandise and the defendant refused to do the same, the plaintiffs brought suit to enforce the guaranty against the defendant. *Id.*

The court noted that "[t]here is not a word in the testimony to show that the defendant ever had any information

alone, would be sufficient to create a genuine dispute of material fact. Defendant has not cited any Oregon authority—and we are aware of none—standing for the proposition that expert testimony is always required to establish the authenticity of a signature. And because the rest of the evidence in the record is sufficient to create a genuine dispute of material fact regarding the signature's authenticity, we need not address either whether the affidavit alone could have established such a dispute of fact or whether the affidavit could even contribute to the other evidence from which a factfinder could conclude that the signature was genuine.

indicating that plaintiffs had accepted his offer and were acting upon it." *Id.* at 171. The court, therefore, concluded that the case fell under the rule announced in the United States Supreme Court case *Davis S. M. Co. v. Richards*, 115 US 524, 527, 6 S Ct 173, 29 L Ed 480 (1885), and adopted as the Oregon rule in *Rothchild Bros. v. Lomax*, 75 Or 395, 398, 146 P 479 (1915). *Davis S. M. Co.* summarizes the rule about the formation of guaranty contracts as follows:

> "A contract of guaranty, like every other contract, can only be made by the mutual assent of the parties. If the guaranty is signed by the guarantor at the request of the other party, or if the latter's agreement to accept is contemporaneous with the guaranty, or if the receipt from him of a valuable consideration, however small, is acknowledged in the guaranty, the mutual assent is proved, and the delivery of the guaranty to him or for his use completes the contract. *But if the guaranty is signed by the guarantor without any previous request of the other party, and in his absence, for no consideration moving between them except future advances to be made to the principal debtor, the guaranty is in legal effect an offer or proposal on the part of the guarantor, needing an acceptance by the other party to complete the contract.*"

115 US at 527 (emphasis added).

Defendant relies on the italicized portion of that opinion to argue that, under *Balfour, Guthrie & Co.*, notice of acceptance is required to form a guaranty contract where three circumstances exist. According to defendant's brief, those circumstances are

> "(1) a guaranty is signed by the guarantor without receiving a prior request from the creditor; (2) the guarantor signs the guaranty outside the presence of the creditor; and (3) there is no separate consideration moving between the guarantor and the creditor, aside from the creditor's promise to make future advances to the debtor."

Defendant further argues that those three circumstances are present in this case and that, consequently, the signed guaranty was merely an offer to form a contract.

We may, as a matter of discretion, invoke the right for the wrong reasons doctrine to affirm a ruling on a basis

that was argued by the parties below, but not relied on by the trial court. *Clemente v. State of Oregon*, 227 Or App 434, 440, 206 P3d 249 (2009). We may do so, however, only when the alternative basis presents a question purely of law or when the evidentiary record is "sufficient to support the proffered alternative basis for affirmance." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001). That requires "(1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below." *Id.* at 659-60

As an initial matter, we disagree with defendant's apparent assumption that *Balfour, Guthrie & Co.* established a special rule, applicable only to guaranty contracts, that requires a beneficiary to provide the guarantor with notice when certain conditions are met. Rather, that case reflects the general rule that "[a] contract of guaranty, like every other contract, can only be made by the mutual assent of the parties." *Balfour, Guthrie & Co.*, 86 Or at 171; *see also Davis v. Wells Fargo & Co.*, 104 US 159, 164, 26 L Ed 686 (1881) (explaining that the notice of acceptance requirement is not "a rule springing from the peculiar nature of the contract of guaranty," rather it is a rule "inhering in the very nature and definition of every contract"). We conclude, therefore, that *Balfour, Guthrie & Co.* must be interpreted consistently with our other precedent that discusses issues of contract formation in general.

Oregon subscribes to the "objective theory" of contract formation, under which the question of whether a contract has been formed depends on whether the parties have manifested mutual assent through their writings, words, or actions. *Kabil Developments Corp. v. Mignot*, 279 Or 151, 157, 566 P2d 505 (1977); *Marnon v. Vaughan Motor Co., Inc.*, 184 Or 103, 158-59, 194 P2d 992 (1948). Whether the parties have manifested mutual assent to form a contract is a question of fact. *Bennett v. Farmers Ins. Co.*, 332 Or 138, 148, 26 P3d 785 (2001).

Mutual assent may be objectively expressed when, for example, one party sends a communication that expresses an offer to form a contract and the other party subsequently sends a communication that unconditionally accepts that offer. *See, e.g., Ken Hood Construction v. Pacific Coast Construction*, 201 Or App 568, 578-79, 120 P3d 6 (2005), *adh'd to as modified on recons*, 203 Or App 768, 126 P3d 1254 (2006), *rev den*, 341 Or 366 (2006). That is not, however, the only way for parties to mutually assent to the formation of a contract. To the contrary, mutual assent may be "expressed through an offer and an acceptance or * * * manifested by conduct." *Bennett*, Or at 153-54.

That principle is consistent with *Balfour, Guthrie & Co.*[3] In that case, the court noted that "[t]here is not a word in the testimony to show that the defendant ever had any information indicating that plaintiffs had accepted his offer and were acting upon it." *Balfour, Guthrie & Co.*, 86 Or at 171. The court did not address the question of whether the acceptance of a guaranty offer may be communicated by a beneficiary's actions. As the above quoted text indicates, however, the Oregon Supreme Court recognized that a guarantor receives notice of a guaranty contract's acceptance when the guarantor learns that the creditor has acted on the guarantor's offer. The court fully adopted that principle in a subsequent decision, *Marshall-Wells Co. v. Tenney et al.*, 118 Or 373, 244 P 84 (1926). In that case, the guarantors all had financial interests in a business that was loaned money pursuant to a guaranty contract that they all signed. *Id.* at 385. Under those circumstances, the court held that the creditor was not required to give the guarantors formal notice of the creditor's acceptance, presumably because the guarantors were assumed to have knowledge of the business's financial dealings. *Id.*

In light of those preceding authorities, we conclude that, where a guarantor signs a guaranty outside the creditor's presence and without having first received a direct

---

[3] We note that plaintiff argued to the trial court that the guaranty that defendant signed waived notice of acceptance. In *Balfour, Guthrie & Co.*, the Supreme Court acknowledged that the notice of acceptance requirement may be waived. 86 Or at 172 (citing *Davis*, 104 US at 169. Plaintiff does not renew that argument on appeal and we do not address it.

request from the creditor asking that the guarantor do so, the guarantor has merely made an offer to the creditor to form a contract. Under those circumstances, the creditor must accept the guarantor's offer before a contract is formed. The creditor may accomplish that acceptance by providing independent consideration to the guarantor or by expressly notifying the guarantor of its acceptance. We also conclude that the creditor's acceptance may be communicated when the guarantor learns that the creditor has begun to perform its obligations under the contract.

Returning to the facts of this case, the summary judgment record reveals no evidence that plaintiff directly communicated to defendant a request that defendant become a guarantor for his son's debts. We also conclude that, under *Balfour, Guthrie & Co.*, Scott Crites did not carry such an offer to defendant on behalf of plaintiff. In *Balfour, Guthrie & Co.*, as in the present case, the plaintiff prepared a guaranty contract that was then presented to the defendant by the defendant's son. Nevertheless, citing *Duncan & Shumate v. Heller*, 13 SC 94 (1880), the court rejected the argument that the son was acting as an agent. *Balfour, Guthrie & Co.*, 86 Or at 173-74. In *Duncan & Shumate*, the Supreme Court of South Carolina concluded that a principal debtor does not become the agent of a lender simply by carrying the guaranty to the guarantor. That court adopted that rule because

> "in most if not all cases the rule which requires notice of the acceptance of the guaranty would be evaded, as the principal debtor ordinarily delivers the letter of guaranty to the person to whom it is addressed, and he of course knows whether the guaranty is accepted and acted upon."

*Duncan & Shumate*, 13 SC at 96. It would be inconsistent with the facts in *Balfour, Guthrie & Co.* and the reasoning in *Shumate* to conclude that Scott Crites was in effect relaying plaintiff's offer to defendant. It also is undisputed that plaintiff did not witness defendant sign the guaranty.

We also conclude that, as in *Balfour, Guthrie & Co.*, plaintiff's acceptance was not evidenced by separate consideration provided by plaintiff to Elmer Crites. On appeal, plaintiff argues that consideration exists in this case because plaintiff's loans to Scott Crites represented both a detriment

to plaintiff and an indirect benefit to defendant.[4] That argument, however, misses the point. Defendant is not arguing that the guaranty contract is unenforceable because it is not supported by adequate consideration. Defendant is arguing that plaintiff did not provide defendant with notice—through payment of separate consideration or otherwise—that plaintiff had accepted defendant's offer to form a contract. *See, e.g., Davis*, 104 US at 167-68 (where a lender provided the guarantor with the nominal consideration of one dollar in exchange for his signature on the guaranty, the lender's acceptance of the offer was proved).

But this case differs from *Balfour, Guthrie & Co.* in at least one important way. Here, unlike in *Balfour, Guthrie & Co.*, the summary judgment record includes some evidence that defendant did learn that plaintiff provided additional loans to his son's business, at a time after plaintiff received the guaranty. The parties do not dispute that plaintiff loaned additional money to Scott Crites's business. Moreover, according to Schnorf's affidavit, he "instructed Scott Crites to confirm the agreement with his father, defendant Crites." Furthermore, Schnorf testified at his deposition that defendant visited Florida several months after plaintiff provided the loans to Scott Crites and that, during that visit, Schnorf thanked defendant for "helping his son with his business and his loan." Schnorf also averred that defendant did not "question or indicate that he did not have personal knowledge of his personal Guaranty obligations." When viewed in the light most favorable to plaintiff, that evidence permits an inference that defendant was aware that the guaranty agreement he signed helped his son's business secure additional loans from plaintiff. Defendant's *Balfour, Guthrie & Co.* argument, therefore, does not present us with an alternative basis on which to affirm the trial court's grant of defendant's summary judgment.

In conclusion, the court erred in granting summary judgment on the basis that there was no evidence that defendant signed the guaranty. There is evidence from which a

---

[4] As a general matter, plaintiff is correct that "an agreement to extend future credits to the debtor is sufficient consideration to support a guaranty of payment of future advances." *Citizens Bank v. Pioneer Investment*, 271 Or 60, 63, 530 P2d 846 (1975).

reasonable juror could find that the signature on the guaranty is defendant's. Furthermore, defendant's argument that there is an alternative basis on which to affirm the trial court's ruling lacks merit because there are disputed issues of fact as to whether defendant knew that plaintiff had issued new loans to defendant's son's business after defendant signed the guaranty.

Reversed and remanded.