Argued September 11, reversed and remanded December 31, 1968

# AMERICAN HARDWARE MUTUAL INSUR-ANCE COMPANY, *Appellant, v.* GRIFFITH RUBBER MILLS, *Respondent.*

448 P. 2d 515

*Austin W. Crowe, Jr.,* Portland, argued the cause for appellant. With him on the briefs were Walter J. Cosgrave and Maguire, Kester & Cosgrave, Portland.

*George L. Hibbard,* Oregon City, argued the cause for respondent. With him on the brief were Hibbard, Jacobs, Caldwell & Canning, Oregon City.

Before SLOAN, Presiding Justice, and O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

## GOODWIN, J.

Plaintiff, an insurer who paid a property damage claim against its insured, brought an action against the seller of the goods which allegedly caused the damage. Plaintiff appeals from a judgment in favor of the defendant.

For the purposes of this case the subrogation will be disregarded. The legal questions will be considered as if the user of the allegedly defective product had prosecuted this action directly against its seller.

The purchaser, McKinley Corporation, was in the business of balancing rubber-covered steel rollers used in paper mills. For several years, the defendant Griffith Rubber Mills had supplied McKinley with rubber plugs for use in the balancing of the rollers. When a roller needed balancing, it was drilled and weights were inserted in it to restore its balance. After each weight had been placed, it was necessary to plug the hole through which the weight had been introduced. The purpose of the rubber plug was to restore the

surface of the roller to a smooth condition necessary for moving a continuous web of wet pulp along the papermaking process without damage either to the paper-in-the-making or to the fine screen used in the manufacture of paper.

In March 1964, Griffith advised McKinley that rubber plugs were no longer available and recommended a substitute plug made of epoxy. McKinley ordered a supply of the epoxy material and used Griffith's epoxy the next time McKinley balanced rollers for the Publishers' Paper Mill in Oregon City. The rollers so balanced later developed "high spots" in the vicinity of the epoxy plugs, and these surface irregularities caused Publishers' Paper to suffer $13,881.50 damages from property loss and "down time."

After the damages to Publishers' Paper had been ascertained and paid, McKinley's insurer commenced this action to recover from Griffith the damages the insurer had paid as a result of the malfunction of the rollers.

The complaint contained counts in negligence and in breach of warranty. The pleading alleged four specifications of negligence:

"(1) In failing to properly label their epoxy product;

"(2) In failing to give proper instructions to McKinley in the use of the epoxy product;

"(3) In failing to properly test their product;

"(4) In recommending to McKinley that it use the epoxy material when it knew or should have known that said material would protrude from the rollers and damage the paper mill's screens under the circumstances."

The complaint also alleged two breaches of implied warranty (fitness for a particular purpose, and merchantable quality) and one breach of an express warranty that the epoxy plugs would be a satisfactory substitute for the rubber plugs theretofore supplied.

Griffith Rubber Mills' answer admitted the sale to McKinley and use of the epoxy, and admitted that some damage had been sustained by Publishers' Paper. Defendant denied that the damage was caused by any negligence on the part of the defendant or by any defect or failure of the defendant's product. The defendant's theory was that a nondefective product had been misused by McKinley.

A trial jury considered a large volume of evidence, most of it highly technical, concerning the use of the epoxy plugs in the rollers in question. Much of the testimony concerned the manner in which the surface of the rollers had developed the high spots, which everyone agreed were present.

If the high spots were caused by inherent unfitness in the epoxy material when used in this case to plug rubber-surfaced rollers, the seller would be liable to the buyer for a breach of warranty. ORS 72.3130. (There was no evidence that the material, as such, was defective.) If, on the other hand, McKinley had used improper techniques in installing the balances and plugs, that fact could relieve the seller of warranty liability, but the seller might still be liable for negligence if the evidence proved a failure to warn when there was a duty to warn. *Lewis v. Baker,* 243 Or 317, 413 P2d 400 (1966).

There was no direct evidence on either side to explain how the surface of the rollers became irregular. The plaintiff's witnesses testified that McKinley had

scrupulously followed the directions for the use of the epoxy, as instructed by Griffith Rubber Mills. This evidence was never controverted by direct evidence.

An expert for Griffith Rubber Mills expressed the opinion that the protruding-receding phenomenon could be explained by only two possible causes, both assumed by the witness to be the fault of the user: (1) allowing oil to come into contact with the rubber, or (2) mixing the epoxy with too much hardening compound. There was no direct evidence to support either hypothesis.

While McKinley denied that cutting oil had been used in drilling the rollers, a witness admitted that some oil had been used in threading the weights. It was possible to draw from this testimony an inference that some oil might have escaped onto the rubber surfaces. To meet the force of such an inference, McKinley points out that the directions furnished by Griffith were silent on the hazards, if any, associated with oil, rubber, and epoxy when used together in the balancing operation. Griffith contends that the harmful effect of oil on rubber is a matter of common knowledge in the industry.

■ After both sides had rested, the trial court withdrew the cause of action based on negligence, and submitted only the question of breach of warranty. Error has been assigned to the withdrawal of the negligence issue.

It was the defendant's theory that oil used in the balancing process was at least a possible cause of the damage. If the defendant knew that oil could cause such damage when the epoxy was used as it was in this case, the defendant had a duty to warn McKinley

of the hazard. The plaintiff's evidence revealed that the defendant had learned some two weeks before the sale to McKinley that epoxy patches had been used on similar rollers which caused difficulty in another mill. The jury could have found the failure to warn McKinley of the danger of using oil under all the circumstances of the case to be negligence under the specification in the complaint on failure to instruct. See *Lewis v. Baker,* supra. Since the jury could have inferred that the defendant knew, or should have known, that oil could cause harm if epoxy plugs were used in a rubber surface, it was error to withdraw negligence in this case.

The error in removing the negligence cause of action was compounded, to the plaintiff's prejudice, when the court instructed the jury on the warranty cause of action. The court gave defendant's requested instructions on both of the defendant's hypothetical explanations of the difficulty. The court told the jury, in effect, that if McKinley mixed the epoxy improperly or failed to clean out the drill holes the defendant was entitled to a verdict. The only evidence on these two subjects was the uncontradicted evidence of McKinley's witnesses that they had mixed the epoxy properly and had cleaned out the drill holes. Under the circumstances, the jury was permitted to speculate about possible causes of the damage for which there was no proof. See *Dormaier v. Jesse,* 230 Or 194, 369 P2d 131 (1962); *Buckles, Exec. v. Continental Cas. Co.,* 197 Or 128, 251 P2d 476, 252 P2d 184 (1953); *Henderson v. U.P.R.R. Co.,* 189 Or 145, 219 P2d 170 (1950).

■ Since the action must be tried again, the court should be careful to segregate the issues of negligence and breach of warranty so that the jury is not allowed

to consider the evidence as if it were fully interchangeable on both theories of liability. In a proper case, negligence may be found from some of the facts, and a nonnegligent defect or breach of warranty may be established by other facts. See *Lewis v. Baker,* supra.

■ If the evidence is such that the jury reasonably could find facts favoring liability on one theory, and by believing a different set of facts, equally supported by evidence, predicate liability on the other theory, there is no error in submitting alternative theories. It is important, however, that the jury be instructed so that it knows upon which theory it is basing a decision imposing liability. *Lartigue v. R. J. Reynolds Tobacco Company,* 317 F2d 19, 24 (5th Cir), cert. denied 375 US 865 (1963).

■ In the case at bar, there was some evidence of a failure by the seller to give adequate instructions, or warnings, concerning hazards from the use of epoxy in a rubber surface. There was also evidence that would have supported a finding of a nonnegligent breach of warranty of fitness for a particular purpose. The failure to submit negligence was, therefore, error. The submission of two affirmative defenses to the warranty claim, for which the defendant had offered no evidence, was also error. Since these errors were prejudicial, there must be a new trial.

Reversed and remanded.