Argued and submitted April 13, reversed and remanded November 16, 2016,
petition for review allowed March 30 (361 Or 311), petition for review dismissed
April 14, 2017 (361 Or 351)

Sheila LANDIS,
*Plaintiff-Appellant,*

*v.*

Wayne LIMBAUGH,
as Personal Representative of
the Estate of Florence Herwick,
*Defendant,*

*and*

WASHINGTON COUNTY,
a governmental subdivision of
the State of Oregon,
*Defendant-Respondent.*

Clackamas County Circuit Court
CV13080092; A159429

385 P3d 1139

Henry C. Breithaupt, Judge pro tempore.

Jan K. Kitchel argued the cause for appellant. With him
on the briefs was Cable Huston LLP.

Christopher A. Gilmore argued the cause and filed the reply brief for respondent. On the answering brief was Chelsea Glynn.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

**DEVORE, J.**

Plaintiff fell and was injured while jogging on a sidewalk in Washington County. She brought a negligence action alleging a failure to inspect or maintain the sidewalk and a failure to warn pedestrians. Washington County moved for summary judgment, and the trial court granted the motion on the basis that the county was immune under Oregon's recreational use statutes, ORS 105.668 to 105.700. Plaintiff appeals, contending that the trial court erred in determining that the county was immune. The county disagrees and, in the alternative, asks that we affirm on the basis that it did not own the abutting land and, therefore, was not a responsible owner under the Beaverton City Code. We reject both defenses, reverse, and remand.

## BACKGROUND

"On review of a summary judgment, we determine whether the moving party is entitled to judgment as a matter of law. * * * [W]e view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Stevens v. Bispham*, 316 Or 221, 223, 851 P2d 556 (1993) (internal citations omitted).

While out jogging on a sidewalk along a street, plaintiff tripped and fell on a section that was pitched upward. As a result, she suffered a fractured elbow and needed multiple surgeries.

Plaintiff brought a negligence action against two defendants—the county and Limbaugh as personal representative of the Herwick estate.[1] Plaintiff alleged that both defendants had failed to inspect and maintain the sidewalk and had failed to warn pedestrians of the sidewalk's condition. Plaintiff also contended that, because the county "owns the land under the sidewalk pursuant to the 1992 deed[,]" the county owned land abutting or adjacent to the sidewalk

---

[1] In 1992, the Herwick family conveyed the strip of land, on which plaintiff was later injured, to Washington County "as a public way forever" for the purpose of widening the street and building a sidewalk. Limbaugh became personal representative of the estate after the Herwicks died. Limbaugh eventually settled with plaintiff and is not involved in this appeal.

so as to become liable under the Beaverton City Code for her injuries.[2]

In support of a motion for summary judgment, the county contended, in part, that the county was entitled to "absolute immunity" under the Public Use of Lands Act, ORS 105.668 - 105.700. The county urged that the statute should be construed to apply when "the principal purpose [of] the person using the land [is] for recreational purposes." In the county's view, immunity does not depend upon whether "the *land* [is used] primarily for a recreational purpose." (Emphasis added.) The county concluded that, because plaintiff was jogging, and her jogging was recreation, the statute's immunity should preclude her claim against the county.

Plaintiff responded that immunity should not be determined simply by a plaintiff's purpose for being on the land. Rather, she urged, immunity involved the nature of the land being used. She emphasized that the recreational use statutes were enacted to provide a *quid pro quo* arrangement with landowners—in exchange for opening land to the public, landowners receive statutory immunity. That exchange rationale, said plaintiff, should not logically extend to a sidewalk already available to the public for general use, and, therefore, the statute should not apply to her claim.[3]

As an alternate basis for summary judgment, the county contended that Limbaugh, not the county, actually

---

[2] Beaverton City Code (BCC) 3.06.015(A) provides, in part, that an owner of land "abutting any public right-of-way has the duty to construct, reconstruct, repair and maintain abutting sidewalks, curbs and monolithic curbs and gutters so as not to present an unreasonable risk of danger to person or property." BCC 5.05.018(A) provides, in part, that "[n]o person owning real property shall cause or allow the sidewalk, curb or monolithic curb and gutter in the abutting public right-of-way to present an unreasonable risk of harm to persons or property." BCC 5.05.018(B)(1) also provides that if a panel or piece of the sidewalk is displaced from an adjacent panel by more than one-half of an inch, it is an "unreasonable risk."

Given the way in which the case is presented and decided, we are not called upon to determine whether the county's ownership of the strip of land on which the sidewalk is located qualifies as land abutting or adjacent to the sidewalk under the city code.

[3] Plaintiff further contended that, to the extent the statute did apply in providing immunity to the county, the statute violated her state constitutional rights under Article I, section 10, and Article I, section 17, because "it removes a remedy."

"owned the property in fee at the time of the incident." The county characterized the conveyance provided by the Herwick Estate to the county in 1992 as an easement rather than a fee title. Thus characterized, the county concluded that "Limbaugh [was] solely responsible under the Beaverton City Code [BCC or city code]." BCC 5.05.018 ("No person owning real property shall cause or allow the sidewalk, curb, or monolithic curb and gutter in the abutting public right-of-way to present an unreasonable risk of harm to persons or property."). Plaintiff disagreed, disputing the county's characterization of its deed.

The trial court granted the county's motion for summary judgment "based on the statutory immunity defense."[4] The trial court did not reach the county's argument that it could not be liable under the city code because it was not the owner of the land adjacent to the sidewalk. Plaintiff assigns error to the court's summary judgment ruling.

On appeal, the parties reprise their immunity arguments, and the county reiterates its deed defense. We consider the county's two defenses in turn and agree with plaintiff in each instance.

RECREATIONAL IMMUNITY DEFENSE

The first defense asks us to interpret Oregon's recreational use statutes. To do so, we follow the framework of statutory construction established in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and modified in *State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009), to discern legislative intent. "We attempt to discern the meaning of the statute most likely intended by the legislature that enacted it, examining the text in context, any relevant legislative history, and pertinent rules of interpretation." *DCBS v. Muliro*, 359 Or 736, 742, 380 P3d 270 (2016) (citing *Gaines*, 346 Or at 171-72). "We begin with the text and context of the statute, which are the best

---

[4] The trial court rejected plaintiff's argument that application of the statute deprived her of a remedy in violation of her constitutional rights. Plaintiff assigns error based on that argument. We need not reach that argument, given our decision on nonconstitutional grounds.

indications of the legislature's intent." *State v. Walker,* 356 Or 4, 13, 333 P3d 316 (2014).

The legislature's intent is expressed in the statement of public policy that introduces the recreational immunity statutes. Although the case at hand presents a question of first impression, the answer is implicit in that opening statement of policy:

> "[I]t is the public policy of the State of Oregon to encourage *owners* of land to *make their land available* to the public *for recreational purposes,* * * * by limiting their liability toward persons entering thereon for such purposes and by protecting their interests in their land from the extinguishment of any such interest or the acquisition by the public of any right to use or continue the use of such land for recreational purposes * * *."

ORS 105.676 (emphases added); *see also Sundermier v. PERS,* 269 Or App 586, 595, 344 P3d 1142, *rev den,* 357 Or 415 (2015) ("Statements of statutory policy are also considered useful context for interpreting a statute."). The same terms, which are significant for our review, recur in the immunity statute itself. ORS 105.682 provides that:

> "(1)  Except as provided by subsection (2) of this section, and subject to the provisions of ORS 105.688, *an owner of land* is not liable in contract or tort for any personal injury, death or property damage that arises out of the use of the land for recreational purposes, gardening, woodcutting or the harvest of special forest products *when the owner of land* either directly or indirectly *permits* any person to use the land *for recreational purposes,* gardening, woodcutting or the harvest of special forest products. The limitation on liability provided by this section applies if the principal purpose for entry upon the land is for recreational purposes, gardening, woodcutting or the harvest of special forest products, and is not affected if the injury, death or damage occurs while the person entering land is engaging in activities other than the use of the land for recreational purposes, gardening, woodcutting or the harvest of special forest products.
>
> "(2)  This section does not limit the liability of an owner of land for intentional injury or damage to a person coming

onto land for recreational purposes, gardening, woodcutting or the harvest of special forest products."

(Emphases added.) Next, a companion statute describes the places where a landowner may choose "to permit" or "to make their land available to the public for recreational purposes." Those places are many. Under ORS 105.688, the places that a landowner may make available for recreational use, with concomitant immunity, include, in part:

"(a) All land, including but not limited to land adjacent or contiguous to any bodies of water, watercourses or the ocean shore * * *;

"(b) All roads, bodies of water, watercourses, rights of way, buildings, fixtures and structures on the land described in paragraph (a) of this subsection;

"(c) All paths, trails, roads, watercourses and other rights of way while being used by a person to reach land for recreational purposes, gardening, woodcutting or the harvest of special forest products, that are on land adjacent to the land that the person intends to use for recreational purposes, gardening, woodcutting or the harvest of special forest products, and that have not been improved, designed or maintained for the specific purpose of providing access for recreational purposes, gardening, woodcutting or the harvest of special forest products."

Not only are the places many which a landowner may make available, but the definition of "landowners" is broad, too. That is, the legislature has provided that public, as well as private landowners may choose to make lands available and qualify for immunity. ORS 105.672(3) ("'Land' includes all real property, whether publicly or privately owned."); *Coleman v. Oregon Parks and Recreation Dept.*, 347 Or 94, 99-100, 217 P3d 651 (2009) (addressing whether the defendant qualified for immunity as a landowner that permitted the public to use its land, a state park, for recreational purposes).

From that statutory construct, we draw attention to central terms of these statutes in order that they are not lost among the clauses and qualifiers. Returning to ORS 105.682(1), we stress that "an *owner* of land is not liable * * * when the owner of land either directly or indirectly *permits*

any person to use the land for recreational purposes." (Emphases added.) To "permit" is commonly understood to mean "to consent to expressly or formally," to "grant leave for or the privilege of," "to give (a person) leave," or to "authorize." *Webster's Third New Int'l Dictionary* 1683 (unabridged ed 2002). The statutes' policy is "to encourage owners of land to *make their land available* to the public for recreational purposes." ORS 105.676 (emphasis added). In each of the immunity and policy statements, the critical actor is the "owner of land." In each statement, the landowner exercises volition, and that volition becomes a conscious decision "to make land available" or to "permit," directly or indirectly, any other person to use the land for recreational purposes. *See id.*; *see also* ORS 105.682(1). It is only as a consequence of the owner's decision to permit particular uses of the land—from recreation to woodcutting—that another person may thereafter enter the land, subject to the limitation that no ordinary tort or contract claim may be brought against the landowner.[5] Thus, the scope of the immunity statute is determined by the volition of the landowner to make land available for recreational or other specified uses. Put another way, the application of immunity depends on the landowner first exercising that volition to make land available for recreational or other specific uses.

The county stresses other clauses and provisions, but they are related terms, not the determinants of immunity. The county contends that recreational immunity applies automatically to "all land" and does so whenever any person uses a public right of way for recreational purposes. It is true the landowner may choose to make available "[a]ll land," "[a]ll roads, bodies of water, watercourses, rights of way, buildings, fixtures and structures on the land," or "[a]ll paths, trails, roads, watercourses, and other rights of way while being used by a person to reach land for recreational purposes" and the like. *See* ORS 105.688. However, those terms just describe the kinds of places that a landowner may choose to make available. Those terms do not automatically make available all places that any individual may choose to enter for recreational purposes without regard

---

[5] As noted above, the statute does not bar claims of intentional injury. ORS 105.682(2).

for the nature of the landowner's permission. Similarly, the immunity provision may address "any" injury or damage when "any person" is permitted to use the land for a recreational purpose, ORS 105.682(1), but that text describes the breadth of immunity. That text does not make immunity apply to any individual with a recreational purpose regardless whether the landowner did or did not make land available for recreational use. The scope and application of recreational immunity depends upon the operative terms we stress: That is, immunity requires that the owner of land has exercised volition to make land available to be used for recreational or other specified purposes.

The parties do not provide, and we do not find, any legislative history that would suggest any other reading of these statutes. Because "we must read ORS 105.682 in a manner that gives effect to its purpose," we consider its legislative origins. *Conant v. Stroup*, 183 Or App 270, 275, 51 P3d 1263 (2002), *rev dismissed*, 336 Or 126 (2003). Our recreational use statutes can be traced to "a model act proposed by the Council of State Governments, which, in turn, was derived from a Wisconsin statute enacted in 1963." *Id.* at 277. "In 1971, the Oregon Legislature adopted the model act almost verbatim, as did more than three dozen other states. That language remained substantially unchanged until 1995, when the Oregon Legislature enacted a number of amendments * * *." *Id.* at 278; *see also former* ORS 105.655 - 105.697 (1971), *repealed by* Or Laws 1995, ch 456, § 9.[6]

At the time that the legislature considered the model act in 1971, the drafters and sponsors of the bill, Senate Bill (SB) 294 (1971), expressed that their intent was "to limit the liability of the landowner so they would be encouraged to permit the use of their land for recreational purposes." Minutes, Senate Committee on State and Federal Affairs,

---

[6] The 1971 version of Oregon's recreational use statutes replaced an even earlier version which had been enacted in 1963. *See* Or Laws 1963, ch 524; *see also Liberty v. State Dept. of Transportation*, 342 Or 11, 16, 148 P3d 909 (2006) (discussing statutes' legislative origins). However, the recreational use statutes "were substantially rewritten in 1971 and again in 1995," so we do not rely on that legislative history in construing the statutes in this case. *Liberty*, 342 Or at 21 n 3. Between 1971 and 1995, the recreational use statutes were amended repeatedly. Those amendments are immaterial to the issue on appeal, and therefore we do not address them.

SB 294, Mar 1, 1971, 1; *see also* Minutes, House Committee on Natural Resources, Subcommittee on Natural Resources, SB 294, April 26, 1971, 1 (statement of Senator Earl Newbry) (purpose of SB 294 was to encourage landowners to keep their land open to the public by limiting their legal liability). The legislature wished to address landowners' fear of considerable legal and financial risk in the event that a person was injured after entering and using their land. *Id.*; *see also* Exhibit A, Senate Committee on State and Federal Affairs, SB 294, Mar 1, 1971 (accompanying statement of Boise Cascade Corporation representative Sam Taylor) ("While we are pleased to make [land] available to the public, we feel that over our heads always hangs the threat of accident to some user who because we have invited the public to share our lands decides to make us liable for his carelessness.").

As it was enacted, *former* 105.665 (1971) provided that a landowner did not owe a "duty of care to keep the land safe for entry or use by others for any recreational purpose" and *former* ORS 105.680(1) (1971) provided that there was no "basis for liability" against a landowner "for injury to persons or property resulting from the use of such land for recreational purposes." A policy provision of the statute mirrored the drafters' intent, declaring that "it is the public policy of the State of Oregon to encourage owners of land to make their land available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." *Former* ORS 105.660 (1971).

In 1995, the legislature repealed those statutes and enacted ORS 105.668 to 105.700.[7] Once again, the drafters contemplated "limiting liability" to landowners who were fearful of lawsuits arising from individuals' injuries while using the land. Tape Recording, House Committee on Natural Resources, Subcommittee on Agriculture and Forestry, HB 2296, Jan 30, 1995, Tape 4, Side A (statement of Rep Kevin Mannix). Representative Larry Sowa explained that the threat of litigation discouraged landowners from opening their land to the public and that some landowners

---

[7] The recreational use statutes, including ORS 105.682, have remained much the same since 1995. In 2009, the legislature amended ORS 105.682 to include "gardening" as a recreational activity. *See* Or Laws 2009, ch 532, § 4. Those few legislative amendments since 1995 are not pertinent to the issue in this appeal.

also had received legal advice to disallow public access. Tape Recording, House Committee on Natural Resources, Subcommittee on Agriculture and Forestry, HB 2296, Jan 30, 1995, Tape 4, Side A (statement of Rep Larry Sowa).

In light of landowners' concerns, the drafters enacted a *quid pro quo* policy. The legislature wished "to encourage landowners to open their land for recreational purposes." *Stewart v. Kralman*, 240 Or App 510, 517, 248 P3d 6 (2011). In exchange for opening land for the public's use, landowners would receive immunity from legal liability. *See Conant*, 183 Or App at 275-76 ("If private landowners will make their lands available to the general public for recreational purposes, the state will 'trade' that public access for immunity from liability that might result from the use of the property." (Emphasis omitted.)). That arrangement was expressed in the policy statement at ORS 105.676 declaring that the provisions are intended "to encourage owners of land to make their land available to the public for recreational purposes, * * * by limiting their liability toward persons entering thereon for such purposes." In short, legislative history, although general in nature, supports our view that one critical determinant in recreational immunity is the landowner's decision to open land, not generally available, for the statutorily specified uses such as recreation.

Nowhere in legislative history do we find any suggestion that recreational immunity would apply to streets or sidewalks that are already generally available to the public, that are not attendant to parks or places of recreation, and that the landowner has done nothing to "make available" for the statutorily specified recreational or similar uses.[8]

---

[8] In *Kelly v. Hochberg*, 349 Or 267, 276, 243 P3d 62 (2010), the Supreme Court recognized that the question of recreational immunity on ordinary public roads was not presented in that case. Even so, the court cited a Ninth Circuit decision that did address recreational immunity on an ordinary public road. In *Seyler v. United States*, 832 F2d 120, 122 (9th Cir 1987), the Ninth Circuit observed that:

"The government's contention, accepted by the district court, is that the recreational use statute applies on *any road* or highway in Idaho. Such a result is clearly absurd. The Idaho legislature cannot have intended to remove tort protection against road defects from all persons who drive for other than business purposes anywhere in Idaho. To apply the recreational use statute to the ordinary street or highway ignores the purpose of the statute, which is to encourage landowners to open land to the public that would otherwise be closed to it. Moreover, application of the statute is particularly egregious

Indeed, the county's view of the statute would produce irrational results where the landowner had not decided to permit recreational use. Plaintiff would be barred from recovering for the county's negligent maintenance because she was jogging in preparation for a half-marathon, but a neighbor who fell while walking to work on the same public sidewalk could recover for her injury. *See, e.g.*, *Papen v. Karpow*, 56 Or App 673, 643 P2d 375 (1982) (city liable for icy sidewalk). Or, a Sunday driver out to enjoy autumn foliage could not recover for injury from an unmarked construction pit in county road, but a Monday commuter could recover for his injury on the same public road. *See, e.g.*, *Pritchard v. City of Portland*, 310 Or 235, 796 P2d 1184 (1990) (city could be liable for negligent maintenance at common law). On ordinary roads and sidewalks, immunity would bar one claim but not the other. Something is wrong with an interpretation that would produce such results. *See State v. Cervantes*, 232 Or App 567, 587, 223 P3d 425 (2009) ("We assume that the legislature did not intend an unreasonable result."); *State v. Bordeaux*, 220 Or App 165, 175, 185 P3d 524 (2008) (same). What is wrong should be apparent: In omitting consideration of the significance and nature of the landowner's permission, the county's view departs from the statute's text, legislative history, and sound reason.[9]

For those reasons, we conclude that the recreational immunity of ORS 105.682 does not apply to plaintiff who was injured on this ordinary sidewalk along a city street.

---

in this case. Idaho's recreational use statute applies on its face only to landowners who 'invite[] or permit[] without charge any person to use [their] property for recreational purposes.' Idaho Code § 36–1604(c).* * * We do not agree that the government 'invited' or 'permitted' Seyler to use a public highway on his own reservation. Nor is Seyler, while on his tribe's reservation, in a position at all comparable to that of a 'person entering' land of another for recreational or any other purposes."

(Emphasis and brackets in original.)

[9] We recognize that the individual's purpose on the land is also relevant to the application of immunity, provided that the land is made available for recreational use by the owner. As noted before, ORS 105.682(1) provides, in part:

"The limitation on liability provided by this section applies if the principal purpose for entry upon the land is for recreational purposes, gardening, woodcutting or the harvest of special forest products, and is not affected if the injury, death or damage occurs while the person entering land is engaging in activities other than the use of the land for recreational purposes, gardening, woodcutting or the harvest of special forest products."

Plaintiff's recreational purpose cannot be the sole determinant of recreational immunity. The county has offered no evidence that it exercised its judgment to decide to permit its property to be used for the specific purposes specified in ORS 105.682(1). Much to the contrary, this property was available for general public use. Accordingly, the trial court erred in granting summary judgment on the basis of recreational immunity.

## DEED DEFENSE

We turn to the county's argument that we should affirm, on alternative grounds, the trial court's ruling granting summary judgment. The county contends that, under the city code, the county is not liable because the county is not the owner of the property abutting the right-of-way. BCC 5.05.018(A) ("No person owning real property shall cause or allow the sidewalk, curb or monolithic curb and gutter in the abutting public right-of-way to present an unreasonable risk of harm to persons or property."). According to the county, its deed from the Herwick Estate conveyed only an easement and did not "pass legal title." Contending just the opposite, plaintiff responds that the deed conveyed a fee interest, not an easement.

In effect, the county presents an alternative basis to affirm that turns on the "right for the wrong reason doctrine." As a matter of our discretion, we may invoke the "right for the wrong reason" doctrine to affirm a trial court's ruling on a basis that was argued by the parties below but that was not relied upon by the court. *Clemente v. State of Oregon*, 227 Or App 434, 439, 206 P3d 249 (2009). We may do so, however, only when that alternative basis for affirmance "presents a question purely of law or when the evidentiary record is 'sufficient to support the proffered alternative basis for affirmance.'" *Wall Street Management & Capital, Inc. v. Crites*, 274 Or App 347, 358, 360 P3d 673 (2015) (quoting *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or

The individual purpose limitation and its qualification are not at issue in this case. *Cf. Coleman*, 347 Or 94 at 102 (concluding that "immunity extends as long as the injured person's principal purpose for entry is recreational, even if the person was engaged in other non-recreational activity at the time of injury").

634, 659, 20 P3d 180 (2001)). To do so requires three conditions: "(1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below." *Outdoor Media Dimensions Inc.*, 331 Or at 659-60.

In this case, we find that it is proper to exercise our discretion under the "right for the wrong reason" doctrine. We do not understand the parties to present a factual dispute but rather a single legal question as to ownership of the land dedicated by deed. The parties litigated the issue before the trial court and developed their arguments during the pretrial hearing. Although the court did not explicitly rule on the issue, the record is materially the same as it would have been if the trial court had ruled on that basis.

"Our goal in interpreting a writing, including a deed conveying property, is to determine the parties' intent." *RealVest Corp. v. Lane County*, 196 Or App 109, 116, 100 P3d 1109 (2004) (citing *Tipperman v. Tsiatsos*, 327 Or 539, 544-45, 964 P2d 1015 (1998) (construing an instrument that created an interest in land); *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997) (construing a contract)). We first look at the text of the instrument and consider that text within the context of the document in its entirety and can consider extrinsic evidence of the circumstances in which it was made. *Id.* Where there is no ambiguity, our analysis begins and ends. *Id.* (citing *Tipperman*, 327 Or at 544-45).

In this case, the 1992 deed to the county was titled, "dedication deed and temporary construction easement." The deed states, in part, that the grantors

"being lawfully seized in fee simple *** do hereby grant to Washington County *** hereinafter called Grantee and unto Grantee's successors and assigns, for the use of the public as a public way forever, all that certain real property situated in the County of Washington and State of Oregon, shown on [an attached exhibit] and being more particularly described as follows, to-wit:

"PARCEL I - (TAKE - DEDICATION OF RIGHT-OF-WAY) Described on Exhibit 'A', attached hereto and by this reference made a part hereof."

(Boldface omitted.) A plat map accompanied the deed, demarcating the property boundaries and proposed right-of-way, labeled, "PARCEL I."[10]

Although we consider each case on its own facts, our analysis of a comparable conveyance in *RealVest Corp.*, 196 Or App at 109, is instructive. In *RealVest*, we considered what kind of interest the grantors, private landowners, had conveyed to Lane County. Like the deed in this case, the deed at issue stated that "'all the following real property *** described as follows, to wit: All that portion of an 80 foot right-of-way ***. To Have and to Hold, the above described and granted premises unto the said Land County ***.'" *Id.* at 116 (emphasis omitted). In construing the deed, we explained that "the phrase 'right of way' generally signifies the grant only of an easement interest and not a fee interest[.]" Nevertheless, we concluded that the grantors had conveyed a fee interest, for four reasons: (1) the conveyance was for the purpose of a public right of way and was granted from private property owners to a public body, rather than between private citizens, (2) the deed's text used "inclusive language," such as "'all that portion,'" (3) the word "easement" was absent from the instrument, and (4) the instrument did not "otherwise purport to limit the nature of the estate being conveyed, with the possible exception of the use of the words 'right of way.'" *Id.* at 117.

The same four factors are present here, and they aid in our determination of the original intent in conveying the property. First, the deed was from private property owners, the Herwicks, to a public body, Washington County, for the purposes of a public right of way. Second, the deed's text is equally inclusive, for instance, using the phrase, "all that certain real property." Third, the word "easement" is absent

---

[10] In 2013, Limbaugh sold their remaining land to another party, "excepting therefrom *that property* conveyed to Washington County by Dedication Deed recorded July 27, 1992[.]" (Emphasis added.) That 2013 conveyance did not refer to "that property interest" or "easement" conveyed by the 1992 deed.

from the instrument. The deed specifies a conveyance of property but does not state that the conveyance is subject to or constitutes an easement. And, fourth, other than perhaps the use of the phrase, "right of way," the instrument did not purport to limit the nature of the estate being conveyed.

The county distinguishes *RealVest*, contending that the deed here is entitled "dedication," rather than a "warranty deed." The county argues that a "dedication" of a right-of-way is indicative of an easement. We disagree.

"A 'dedication' is 'an appropriation of land by the owner for a public use.' For example, a private property owner may dedicate land to be used as a public roadway." *Dayton v. Jordan*, 279 Or App 737, 746, 381 P3d 1031 (2016) (quoting *Security & Invest. Co. v. Oregon City*, 161 Or 421, 432, 90 P2d 467 (1939)). A dedication may, but does not necessarily, indicate the creation of an easement. *Mid-Valley Resources v. Foxglove Properties*, 280 Or App 784, 789, 381 P3d 910 (2016) (citing *Black's Law Dictionary* 473 (9th ed 2009) (defining "dedication" as "the donation of land or creation of an easement for public use")). Both an easement and a dedication involve transfer of a property interest, but they are not synonymous; not every dedication will transfer an interest as an easement. *River's Edge Investments, LLC v. City of Bend*, 245 Or App 410, 417, 265 P3d 786 (2011), *rev den*, 351 Or 545 (2012) ("Easements and dedications both implicate the transfer of a property interest.").

As we explained in *RealVest*, "the conveyance of privately-owned property to a public body for a public 'right of way' is inconsistent with the understanding that the grantor retains some privately held right to use the conveyed property after the conveyance occurs." 196 Or App at 117. *But see Wallowa County v. Wade*, 43 Or 253, 257-58, 72 P 793 (1903) (observing that where land was dedicated for public use by federal act and where there was a manifestation by public of intent to accept the dedication as right of way, subsequent landowners take the land subject to an easement). In light of that observation and the factors present in this case, we conclude that the 1992 deed unambiguously conveyed fee title and did not convey a mere easement.

## CONCLUSION

Because plaintiff was injured on an ordinary sidewalk that was already available for general public use, not on lands that the county had decided to make available for recreational use, the county was not immune from liability under ORS 105.682. And, because the 1992 deed made the county the owner of the land related to the sidewalk, it could not avoid the prospect of liability under the city code on the basis that it held a mere easement interest. Therefore, the trial court erred in granting summary judgment and dismissing plaintiff's claims.

Reversed and remanded.