No. 396                 May 7, 2025                 279

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Ramona AUSTIN,
an individual;
Terra Hartley, an individual;
and Marquita Corley, an individual,
*Plaintiffs-Appellants,*

*v.*

WALMART, INC.,
a Delaware corporation,
and Evie Schroeder, an individual,
*Defendants-Respondents,*

*and*

Evelyn JOHANNESEN,
an individual,
*Defendant.*

Multnomah County Circuit Court
20CV36228; A180634

Judith H. Matarazzo, Judge. (Judgment of Dismissal)

Leslie Roberts, Senior Judge. (Order on Defendants' Motion for Summary Judgment)

Argued and submitted April 10, 2025.

Adam Kiel argued the cause for appellants. Also on the briefs were Mark McDougal, Gregory Kafoury, and Kafoury & McDougal.

Jordyn Parsons argued the cause for respondents. Also on the brief were John R. Barhoum and Chock Barhoum LLP.

Before Lagesen, Chief Judge, O'Connor, Judge, and Kistler, Senior Judge.

LAGESEN, C. J.

Reversed and remanded.

**LAGESEN, C. J.**

Plaintiffs appeal the trial court's judgment of dismissal of their racial discrimination claim brought under Oregon's Public Accommodations Act, ORS 649A.403. The trial court dismissed plaintiffs' claim upon defendants' motion for summary judgment, concluding that plaintiffs failed to present legally sufficient evidence of racial discrimination to submit their claim to a jury. We reverse and remand.

We review the trial court's ruling on a motion for summary judgment to determine whether there is a genuine dispute of material fact over issues raised in the motion and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Two Two v. Fujtec America, Inc.*, 355 Or 319, 324, 325 P3d 707 (2014). We draw the facts from the summary judgment record, state the facts in the light most favorable to the nonmoving party—here, plaintiffs—and draw all reasonable inferences from the summary judgment record in their favor. *Two Two*, 355 Or at 331.

Plaintiffs are three Black women who allege that defendant Schroeder, a White woman employed by defendant Walmart as a cashier, unlawfully refused to check them out at the cosmetics register on account of the fact that they are Black. The allegation arose from the following incident.

Plaintiffs were customers at a Walmart in Wood Village, Oregon—just outside of Troutdale—in June 2020. At the time, according to several store employees, the COVID-19 pandemic led the cosmetics department of the store to create new rules for in-person shopping. One of those rules limited the types of items cashiers could ring up at the cosmetics register to cosmetics or a limited number of noncosmetic items. That rule did not contain a formal limit on the number of items a cashier could ring up at the cosmetics register. Another rule limited the number of customers in the enclosed cosmetics department to either four or five at a time to allow for social distancing.

The rules were not written and were instead implemented by the oral agreement between the store's floor

manager and the store's Cosmetics Department Manager, Rowe. There was no signage or other indication to let customers know about those restrictions; instead, it was the cashier's duty to communicate and enforce those unwritten rules.

As sometimes happens with unwritten rules, receipts from the day in question show that those rules were not uniformly enforced. The receipts show that, on that day, other customers were able to purchase a variety of items that were not cosmetics in numbers not reasonably characterized as "limited." In particular, the receipts show transactions that included 16 noncosmetic items in an order of 25 items, 12 noncosmetic items in an order of 17 items, an order of 10 items all of which were not cosmetics, and another order of six items all of which were not cosmetics. The noncosmetic items in those orders included, among other things, garden mulch, brick stone, pet items, groceries, ice coolers, snack foods, clothing, a box fan, and a toilet plunger.

That day, Schroeder was the cashier on duty for the cosmetics department. Video evidence shows that the three plaintiffs lined up to check out their items; one had only a small number of cosmetic items and the other two had shopping carts with a mix of cosmetic and noncosmetic merchandise. Although the video does not clearly show how many items plaintiffs had in their carts, witnesses later described their carts as full. After Schroeder rang up the cosmetics-only order,[1] another plaintiff began unloading the merchandise from her cart on the cosmetics counter.

Schroeder at that point told the two plaintiffs with the shopping carts that she could not ring up their orders because they had too many items. What happened next is disputed, but in viewing the facts in the light most favorable to plaintiffs, the following occurred. After Schroeder refused to ring up plaintiffs' orders, Schroeder asked them

---

[1] It is undisputed that Schroeder rang up one plaintiff's order that contained only cosmetic merchandise. In their brief on appeal, defendants assert that, at a minimum, the trial court's judgment should be sustained as to that plaintiff. We disagree. Defendants did not move for summary judgment on that basis, and our review is confined to the issues "raised in the motion," because plaintiffs did not have a fair opportunity to meet that issue in the trial court. ORCP 47; *Two Two*, 355 Or at 324.

what they were doing in Troutdale—a question that plaintiffs took as racially motivated. Schroeder and plaintiffs began arguing.

The manager for another department, Knowles, overheard the argument, walked over to the cosmetics department to intervene, and asked Schroeder to ring up the orders. Schroeder declined. Knowles offered to ring up the orders herself at the cosmetics counter. Schroeder also declined the offer, explaining that they had too many items. Knowles then walked plaintiffs to the front end of the store.

Meanwhile, Rowe called Sherita Scott, a Black woman employed by defendant as an assistant manager and requested Scott's assistance in the cosmetics department. Scott "was told that there was a racist incident going on, that [Schroeder] was doing her thing again and not ringing up Black customers." She was also "told [she] was needed to go meet with the women because [she is] Black. They believed [her] also being Black would diffuse the situation." Scott was aware of prior "incidents of racist behavior toward customers" by Schroeder and had discussed "racist incidents involving" Schroeder with Walmart's manager. As Scott was walking over to the cosmetics department, she received another call requesting her to go to the registers on the front-end of the store instead of to the cosmetics department. Plaintiffs were at those registers when Scott arrived. Scott introduced herself, and plaintiffs explained that they were very upset because they were refused service by Schroeder; after Schroeder refused to ring plaintiffs' orders up, Schroeder stated that she was not going to "ring them people up." Knowles ultimately rang up plaintiffs' orders at the front-end register.

Plaintiffs then filed the instant lawsuit against Schroeder and Walmart. They claimed that Schroeder racially discriminated against them in violation of Oregon's Public Accommodations Act, ORS 659A.403, when she refused them service by not ringing up their orders at the cosmetics register. Plaintiffs also alleged that Schroeder's actions caused them to suffer from feelings of racial stigmatization, embarrassment, humiliation, anger, indignity, and shame. Plaintiffs sought $200,000 in noneconomic damages

for that emotional distress. The trial court dismissed the claim upon defendants' motion for summary judgment, concluding that there was insufficient evidence to support an inference that Schroeder's conduct in refusing to ring up the second two plaintiffs was racially motivated. Plaintiffs appeal.

Oregon's Public Accommodations Act provides that "all persons *** shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination, or restriction on account of race."[2] ORS 659A.403(1). A plaintiff alleging that a defendant violated that statute bears the burden of proof at trial and, on a motion for summary judgment by the defendant, the burden to produce evidence that gives rise to a genuine issue of fact "on any issue 'raised in the motion.'" *Two Two*, 355 Or at 324 (quoting ORCP 47 C). To satisfy that burden, a plaintiff must produce some or any evidence that presents a genuine issue of material fact for a jury to resolve. *Mason v. BCK Corporation*, 292 Or App 580, 587, 426 P3d 206 (2018). Circumstantial evidence of discrimination is sufficient to satisfy that burden. *Wheeler v. Marathon Printing, Inc.*, 157 Or App 290, 303, 974 P2d 207 (1998).

In their motion for summary judgment, defendants raised two issues: first, that plaintiffs could "not prove that [Schroeder]'s actions were racially motivated, and second, that plaintiffs could not prove that they suffered any damages." Only the first issue is before us on appeal, and so the only question we consider is whether plaintiffs presented "some or any evidence" that Schroeder's actions were racially motivated. *Mason*, 292 Or App at 587.

We conclude that plaintiffs produced legally sufficient evidence to put before a jury the issue whether Schroeder's denial of service at the cosmetics register was racially motivated. That is so because, in viewing the summary judgment record in the light most favorable to plaintiffs, as we must at this stage—ORCP 47 C; *Two Two*, 355

---

[2] Defendants do not dispute that Walmart is a place of public accommodation subject to ORS 649A.403. *See* ORS 659A.400 (defining a "place of public accommodation").

Or at 331—the evidence suffices to create a genuine question of material fact on the issue. In other words, the facts as set forth above which we have stated in the light most favorable to plaintiffs in accordance with our standard of review would allow a jury to draw the reasonable inference from those circumstances that Schroeder's refusal to check out loads with noncosmetic items for plaintiffs was based on their race.[3]

Arguing against that conclusion, defendants assert that the evidence does not suggest that Schroeder had any discriminatory intent when she refused to ring up plaintiffs' orders, which made summary judgment in their favor appropriate. According to defendants, the evidence shows that Schroeder's refusal was the application of a race-neutral COVID-19 policy, and they explain that Schroeder's question about plaintiffs' purpose in Troutdale could have been a nondiscriminatory question about how plaintiffs' day was going or what else they had planned for the day. Those race-neutral explanations may be plausible interpretations of the evidence, and a reasonable factfinder might be able to view the evidence in that way and reject plaintiffs' claims. But the question before us at this stage is not whether a factfinder could reasonably view the evidence in defendants' favor; the question is whether a reasonable factfinder could find for plaintiffs when the evidence is viewed in the light most favorable to plaintiffs. Here, a reasonable factfinder would not be required to accept defendants' proffered race-neutral reasons for Schroeder's conduct and could instead find that conduct was racially motivated.

---

[3] In their brief on appeal, defendants argue that Scott's sworn declaration should not be afforded any weight in the analysis, contending that the assertions about Schroeder's prior history are "wholly unsupported by other documentation or testimony to even remotely support the claims," and that "Ms. Scott does not have personal knowledge of Ms. Schroeder's state of mind when she elected not to ring up plaintiffs' merchandise." Although these arguments might persuade a jury not to place much weight on Scott's testimony, a court is not permitted to weigh evidence when evaluating whether summary judgment is proper. Weighing evidence is the province of the jury, not the court. *Lowell v. Wright*, 369 Or 806, 820, 512 P3d 403 (2022) ("[A]t summary judgment, the [court] must view the evidence in the light most favorable to [the nonmoving party], leaving it to the eventual factfinder to make credibility determinations."); *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 461, 31 P3d 421 (2001) (appellate court cannot "construe[] evidence and [draw] inferences therefrom in favor of" one party).

Defendants also assert that three cases support their argument that summary judgment was appropriate: *King v. Greyhound Lines, Inc.*, 61 Or App 197, 656 P2d 349 (1982), *Dalbeck v. Bi-Mart Corp.*, 315 Or App 129, 500 P3d 711 (2021), and *Blachana, LLC v. BOLI*, 273 Or App 806, 359 P3d 574 (2015). None of those cases helps defendants because each addresses the scope of what it means to deny full and equal accommodations under the Public Accommodations Act. Defendants' motion for summary judgment did not put that point at issue. Rather, as noted, the motion focused on whether plaintiffs could show damages, something not at issue in this appeal, and-on whether the denial of service by Schroeder was discriminatory—an issue that none of the cases mentioned address.

In sum, on this record, a reasonable factfinder could permissibly find that Schroeder's decision to deny plaintiffs the privilege of checking out their noncosmetic items at the cosmetics counter was based on their race, in view of the evidence of the comments she made in connection with the denial, the evidence of her history of treating Black customers differently, and the evidence that some customers were afforded the privilege of checking out substantial numbers of noncosmetic items at the cosmetics counter on the same day. Thus, plaintiffs have demonstrated sufficiently that there is a jury question as to whether Schroeder's treatment of plaintiffs was based on race, making the trial court's grant of summary judgment erroneous.

Reversed and remanded.