154 July 23, 2025 No. 663

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Tonya K. OSGOOD,
Personal Representative of
the Estate of Lillyan K. Bauer, deceased,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON,
*Defendant-Respondent,*
*and*

WESTERN FOREST PRODUCTS US LLC et al.,
*Defendants.*

Clatsop County Circuit Court
22CV36359; A184621

Kirk C. Wintermute, Judge.

Argued and submitted June 6, 2025.

Ashleah N. Howard argued the cause for appellant. On the briefs was Dean Heiling.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Egan, Judge, and Jacquot, Judge.

JACQUOT, J.

Reversed and remanded.

**JACQUOT, J.**

This case concerns whether it was proper to grant summary judgment to a landowner on the basis of recreational immunity, under ORS 105.682(1),[1] when the injuries in question occurred within a rock quarry surrounded by recreational forestland. Viewing the facts in the light most favorable to the nonmoving party, we determine that there is a genuine dispute of material fact as to whether the rock quarry is or is not recreational land and that defendant is not entitled to judgment as a matter of law. *See Austin v. Walmart, Inc.*, 340 Or App 279, 281, 570 P3d 642 (2025) (providing the legal standard regarding a motion for summary judgment standard). Thus, we determine that the trial court erred by granting summary judgment in favor of defendant and we reverse.

Defendant, the State of Oregon, owns a number of forests, which are managed by the Oregon Department of Forestry (ODF), including the Clatsop State Forest where plaintiff was injured. *See generally* ORS 526.005 - 526.041. Oregon's state forestry policy encourages a number of uses and management practices for forestlands. For example, the Oregon Administrative Rules regarding forestry "establish standards for *recreational-* and *commercial-*use of State Forest Lands." OAR 629-025-0000 (emphases added). Oregon's forest management policies recognize many benefits forests provide, including but not limited to "forest cover and soil, air, and water resources," "habitats for wildlife and aquatic life," "recreation" and "[e]conomic benefits," such as through employment and commercial lumber products. ORS 526.460. The same forestland may serve multiple purposes for multiple users at the same time, so the application of

---

[1] ORS 105.682(1) provides, in relevant part:

"Except as provided by subsection (2) of this section, and subject to the provisions of ORS 105.688, an owner of land is not liable in contract or tort for any personal injury, death or property damage that arises out of the use of the land for recreational purposes *** when the owner of the land either directly or indirectly permits any person to use the land for recreational purposes ***. The limitation on liability provided by this section applies if the principal purpose for entry upon the land is for recreational purposes ***, and is not affected if the injury, death or damage occurs while the person entering land is engaging in activities other than the use of the land for recreational purposes ***."

recreational use immunity is fact-laden and determined by the circumstances of each case.

The parties do not dispute that defendant offers a recreational trail network for off-highway vehicles (OHVs), including all-terrain vehicles (ATVs), that can be used by members of the public without paying an entrance fee. Plaintiff, who was a 15-year-old at the time of the incident, was riding her ATV on one such trail network within the Clatsop State Forest. She came upon a series of rock piles. The state does not regard the rock piles as part of the OHV trail network and the rock piles are not maintained or intended for ATV use. However, there were no physical markers or signs indicating that the rock piles were not part of the OHV trail network. Tragically, once plaintiff rode her ATV to the top of one pile, she encountered a steep drop-off that had not been visible when she started up. Loose rock gave away, and she fell down the roughly 20-foot drop, with her ATV landing on top of her. She was injured in the fall and ultimately died as a result of her injuries.

The parties do dispute whether, as a matter of law, the rock quarry is recreational land or not. As we understand from the parties, the rock quarry can be accessed by construction vehicles via a road into the rock quarry and is otherwise surrounded by recreational land. It does not contain designated trails or thoroughfares. Had plaintiff's injuries occurred on the maintained OHV trail, defendant would presumably be shielded from liability under Oregon's recreational immunity statute, ORS 105.682. However, plaintiff argues, as she did in the trial court, that the rock quarry is a work site that is not subject to recreational immunity; or, that there is a genuine dispute of a material fact regarding the rock quarry being a nonrecreational work site. Defendant responds that "the state submitted evidence and legal argument that the Clatsop State Forest is open to the public for recreational use, as is all state forest land[,]" and that although ATVs are to only be used on designated trails, "the quarry is *** open to the public for recreational use *** [such as] walking or riding a bicycle."

Regarding the function of the rock quarry, the court determined that it was held open for recreational use, and that

therefore, defendant was immune from liability under ORS 105.682(1).[2] However, it is uncontested and the court recognized that state contractors remove gravel from the rock piles for use in road maintenance projects. A declarant who works for ODF attested that "although these piles are adjacent to our recreational area they are not considered part of the trail system and should be off limits to riders." When asked to clarify, he reiterated his belief that the rock piles are not part of the recreational area.[3] Another ODF employee provided a differing declaration, which states that "the [rock] piles are open, just like the rest of our forest lands, to recreational use."[4] On the basis of those conflicting pieces of evidence, there is a genuine issue of material fact as to the status of the rock quarry.

Nonetheless, defendant may still have prevailed on recreational immunity if the rock quarry could be regarded indisputably as recreational land as a matter of law. Defendant argues that we have "applied the recreational immunity statute to bar a nearly identical claim" in *Stedman v. Dept. of Forestry*, 316 Or App 203, 502 P3d 234 (2021). Defendant, however, misapprehends the issue and holding of *Stedman*. In *Stedman*, a plaintiff suffered due to a very similar ATV accident in a different rock quarry within the Tillamook State Forest. *Id.* at 204-05. But the similarities end there. In *Stedman*, the plaintiff's claim relied on his argument that recreational immunity did not apply because

---

[2] We do not consider any comments that plaintiff asserts the trial court made during the summary judgment hearing because no transcript of that hearing was provided for appellate review. However, we do consider the trial court's letter opinion and order on defendants' motion for summary judgment, both dated May 15, 2024.

[3] The state argues that this employee was only remarking that the rock quarry was not part of the OHV trail network. Although the declarant did make that point, the declarant was asked "So these rock piles are not part of the recreational area; correct?," to which he responded "That's affirmative."

[4] Review of forestry OARs does not make clear that all state forestlands are open for recreational use. *See* OAR 629-025-0000 (indicating that the forestlands are to be managed for "recreational- and commercial-use"); OAR 619-025-0092 ("The State Forester may establish portions of State Forest land that are closed or limited to specific uses or activities by the public."); OAR 629-025-0050 (explaining that ODF may designate "Designated Recreation Areas," and that "[m]aps showing the Designated Recreation Areas must be kept on file"). Furthermore, during oral argument, the state conceded that there may be areas within a state forest "the State Department of Forestry has decided to close," and that the forests are both working and recreational resources. The state suggested that during permitted logging activity, the area would likely be closed to recreation during that time.

he purchased an operating permit for his ATV, which, in his view, constituted a "charge for permission to use the land for recreational purposes," which voids recreational immunity per ORS 105.688(3). *Id.* The holding in *Stedman* addresses whether the ATV operating permit "can be characterized as a 'charge' paid 'in return for granting permission' to go upon 'the land[,]'" *id.* at 205, and the court concluded that the ATV permit could not be characterized in such a way as to trigger the exception to recreational immunity. *Id.* at 213. The plaintiff in *Stedman* did not argue and the court did not address whether a rock quarry such as the one where plaintiff was injured constitutes recreational land or not; therefore, *Stedman* is not controlling.

Plaintiff argues that *Landis v. Limbaugh*, 282 Or App 284, 385 P3d 1139 (2016), supports her position. In *Landis*, we made clear that recreational immunity does not attach simply because an individual is recreating. *Id.* at 295-96. Thus, in this case, defendant is not immune simply because plaintiff was recreating on the rock piles. In addition to the plaintiff's use, "the scope of the [recreational] immunity statute is determined by the volition of the land owner to make land available for recreation or other specified uses." *Id.* at 291. That volition involves "a conscious decision 'to make land available' or to 'permit,' directly or indirectly, any other person to use the land for recreational purposes." *Id.*

Defendant argues that *Landis* is distinguishable because the sidewalk where the *Landis* plaintiff was injured was "available for general public use," *id.* at 296, whereas defendant asserts that "the summary judgment record [in this case] contains uncontroverted evidence that the state made a decision to permit recreation on the state forests * * *." Although it is clear that the state made a decision to permit recreation within the Clatsop State Forest, the summary judgment record indicates conflicting evidence about whether the *rock quarry* was held open for recreational use— at least one ODF employee directly stated that the quarry was not part of the recreational area.[5] Defendant argues

_____

[5] The parties raise questions regarding the applicability of *McCormick v. State Parks and Recreation Dept.*, 366 Or 452, 466 P3d 10 (2020). *Id.* at 461, largely addresses a question not at issue in this case—whether "an owner can 'permit' recreational use of its land * * * even if the public already has a right

that the evidence from that ODF employee shows only that the rock quarry was not to be used by OHVs. That type of argument is one to be made to a jury, not an appropriate basis for summary judgment. *See, e.g.*, *Anselmo v. Target Corp.*, 340 Or App 21, 31-32, 569 P3d 995 (2025) (describing an instance where, if the summary judgment record supports that "[a] reasonable juror might be persuaded" by one argument or another about the facts in question, summary judgment is not appropriate).

Given that the rock quarry cannot indisputably be regarded as recreational land as a matter of law, and that the record contains contradictory evidence about the status of the rock quarry, defendant was not entitled to summary judgment. At the very least, plaintiff "produced legally sufficient evidence to put before a jury the issue" whether the rock quarry was held open for recreational use. *Austin*, 340 Or App at 284.

We briefly address plaintiff's alternative argument, that summary judgment was not proper because plaintiff could have prevailed under a theory of intentional injury, under ORS 105.682(2), for which defendant would not be immune. ORS 105.682(2) "does not limit the liability of an owner of land for intentional injury or damage to a person coming onto land for recreational purposes ***." Plaintiff asserts that "the state's failure to address the danger was intentional," and therefore constituted an "intentional injury" under ORS 105.682(2). The summary judgment record contains evidence, and the trial court found, that there were two other accidents at the same rock quarry in the month or so before plaintiff's death; as the trial court explained, "[t]estimony given by ODF employees indicates that they were aware of one of these incidences *** but chose not to take any further action at that time." However, plaintiff's alternative argument seems to conflate a theory

---

to recreate on the land." However, it provides that a land owner "can 'indirectly permit' recreational use if it tolerates the use or makes the use possible." *Id.* As we have discussed, the summary judgment record contains conflicting evidence about the state's volition regarding the rock quarry. Although defendant may try to prove, at trial, that it "indirectly permit[ted]" recreational use of the rock quarry so as to bar plaintiff's recovery—and plaintiff may raise factual and legal arguments in response—*McCormick* does not provide a basis for granting summary judgment in favor of defendant.

of negligence with the doctrine of intentional torts. Failure to address any danger that the rock quarry poses, or the legal theory of "failure to warn," is a theory of negligence, rather than itself an intentional tort. *See, e.g.*, *Amer. Hdw. Ins. v. Griffith Rubber*, 252 Or 182, 185, 448 P2d 515 (1968) (providing that a defendant might be "liable for negligence" based on "a failure to warn when there was a duty to warn"); *see also Pocholec v. Giustina et al*, 224 Or 245, 251, 355 P2d 1104 (1960) (explaining that the "'doctrine of attractive nuisance' is \*\*\* part of the law of negligence").

Because ORS 105.682(2) does not limit liability "for intentional injury," but does limit liability for negligent acts—whether the *type* of negligence is or is not based on a failure to warn or prevent a risk—plaintiff's alternative argument fails as a matter of law and the trial court did not err by rejecting that argument.

Reversed and remanded.