Argued and submitted September 10, 1979, affirmed April 14, 1980

# DOUGLAS COUNTY,
## *Respondent,*
### *v.*
# UMPQUA VALLEY GRANGE, INC.,
## *Appellant.*
## (No. 77 1606, CA 13114)
### 609 P2d 415

Don S. Willner, Portland, argued the cause for appellant. With him on the brief was Willner, Bennett, Bobbitt & Hartman, Portland.

Edward P. Fitch, Assistant County Counsel, Roseburg, argued the cause for respondent. With him on the brief was Clifford Kennerly, County Counsel, Roseburg.

Before Joseph, Presiding Judge, Richardson, Judge, and Schwab, Chief Judge.*

RICHARDSON, J.

---

*Schwab, C.J., *vice* Lee, J., deceased.

## RICHARDSON, J.

Plaintiff Douglas County brought this declaratory judgment suit, seeking to enjoin the defendant Umpqua Valley Grange from further occupancy of land dedicated as a public square. Defendant appeals from the trial court's decree granting the relief sought by the county. We affirm.

In 1851, Levi Scott recorded a plat in Umpqua County (now Douglas County) for a tract of land which he intended to become the town of Scottsburg. The lot which is the subject of this suit was designated on the plat as a "public square." Scottsburg was never incorporated.

In 1855, a school building was constructed on the lot; by whom does not appear in the record. In addition to its use as a school, the building was used for various types of community and civic events. In 1910, a new school building was constructed. The original schoolhouse was torn down and replaced by a community center building, which was destroyed by a storm in the late 1930's. The "new" school building is the only structure remaining on the lot.

In the late 1930's, students of the Scottsburg school district began attending public schools in Reedsport, and the school district ceased using the building for school purposes. The building continued to be used for community events. In 1941, the school district gave defendant permission to use the building as a Grange meeting hall. Four years later, the district agreed that defendant could use the building if it maintained the building.

Since 1945, the county, the school district and defendant have had sporadic contact and dealings regarding the property. Representatives of defendant met with certain county officials in approximately 1950. The latter gave what defendant's representatives understood as verbal assurances that defendant could continue using the building, but the county

[741]

officials declined to agree that defendant could acquire ownership of the property. In 1970, the school district gave defendant a quit claim deed to the property. Defendant has made improvements to the building which, together with upkeep and maintenance, have cost defendant a total of $5,000 to $6,000 over the period defendant has had possession. Defendant has made the building available for community activities, subject to defendant's rules and subject to reimbursement by the persons using the building for utility, insurance and similar costs.

The county brought this suit after a group of persons sought to use the building and were denied access by defendant because the intended use was inconsistent with defendant's rules. The county alleged in its complaint that it

"* * * are [sic] and at all material times herein have been the sole trustee for the public's right to use said above described land and any improvements thereon as a public square and are thus entitled to immediate possession. [The county] further contends that the occupation by the defendant is inconsistent and substantially impairs the public's right to use the land and any improvements."

Defendant argues, first, that the county does not have standing to bring the suit, and second, that defendant has obtained title to the property, either through adverse possession or by abandonment of the dedicated property by the county or the dedicator and his heirs. As a corollary of its second argument, defendant contends that the county is equitably estopped to claim title.

Defendant advances two arguments in support of its proposition that the county lacks standing. The first is that the county never accepted the dedication, has never used the land or owned it, and therefore has no interest in the enforcement of the dedication. In Oregon, however, a dedication to the public is *impliedly* accepted when, as occurred here, lots are sold with

reference to a plat which shows the dedication. *See City of Molalla v. Coover et ux.*, 192 Or 233, 235 P2d 142 (1951); *McCoy v. Thompson*, 84 Or 141, 164 P 589 (1917); *Meier v. Portland Cable Ry. Co.*, 16 Or 500, 19 P 610, 1 LRA 856 (1888). When dedicated land is accepted, the governing body of a county or municipality becomes the trustee for the public to assure that the land is used for the dedicated purpose or purposes. *Hyland v. City of Eugene*, 179 Or 567, 572-73, 173 P2d 464 (1946); Parks, *The Law of Dedication in Oregon*, 20 Or L Rev 111, 140-41 (1941). Here, because the City of Scottsburg was never incorporated, the county is the only political body except for the state, possessing sufficiently general governmental powers to exercise in such a trusteeship for the property in question.

Defendant's second standing argument is that the property has not been used as a public square at any time since the school district began using it in 1855, that the dedication has therefore failed because of misuse or nonuse, that the property has therefore reverted to the heirs of the dedicator and that the county accordingly has no standing. Stated otherwise, defendant's contention is that the county has lost its authority to enforce the terms of the dedication because it allowed the land to be diverted to uses which violate the dedication. However, the county and its predecessor had no authority to permit such a diversion, assuming *arguendo* that one occurred. The court stated in *Hyland:*

> "* * * When such a grant has been made by a private owner, the municipality, by accepting the dedication, becomes a trustee to carry out the terms of the grant and it has no power to sell or lease the property for purposes foreign to the dedication." 179 Or at 572-73.

*See, also, Haberly v. Treadgold*, 67 Or 425, 136 P 334 (1913).

Defendant's second standing argument fails for the additional reason that no reversion has occurred, at

[743]

least insofar as the record here discloses. The public's interest in dedicated land is not terminated by, and no reversion can result from, misuse or nonuse which does not render impossible the later use of the property for purposes which comply with the dedication. *See* Parks, *The Law of Dedication in Oregon,* 20 Or L Rev 111, 155 (1941), and authorities therein cited. Here, it is obviously possible for the property to be used for public purposes now, even assuming that it has not been so used while the school district and/or defendant have had control of it.[1] We conclude that the county has standing.

Through its affirmative defenses, defendant argues that it has acquired title to the property through adverse possession, abandonment, or equitable estoppel.

The adverse possession argument is based on three alternative propositions: first, that the school district's use of the property was inconsistent with the dedication, that the property therefore reverted to the dedicator's heirs, that the school district held adversely to the reversionary interest and thereby acquired the property and that the school district transferred title to defendant; second, that the defendant's use of the property was inconsistent with the dedication, that the property therefore reverted and that defendant acquired the property by adverse possession against the dedicator's heirs; and third, that the county itself lost title through adverse possession by the defendant because defendant's holding of the property was inconsistent with the dedication and therefore adverse.

These contentions fail for largely the same reasons defendant's standing argument fails. The property did not revert, and there could accordingly be no holding by the school district or defendant which was adverse to the dedicator's heirs. There also could have been no

---

[1] We also note that nothing in the record suggests that the holders of the reversionary interest have asserted a right to the property by reverter.

holding adverse to the county, because no claim of right could exist based on the countys permitting the property to be used for purposes in conflict with the dedication. *See Hyland v. City of Eugene, supra,* 179 Or at 572-73; *Haberly v. Treadgold, supra.*

Defendant next argues that Levi Scott and his heirs and/or the county have abandoned the dedicated property, again because the school district and, later, defendant ostensibly were allowed to use the property for purposes foreign to the dedication. This argument is substantially answered by the previous discussion of other issues. In addition, as the author states in Parks, *The Law of Dedication in Oregon,* 20 Or L Rev 111 (1941):

> "Misuser, nonuser, or delay in improvement and use are insufficient to constitute an abandonment. There must be some affirmative act showing an intention to relinquish possession. * * *" 20 Or L Rev at 157.

*See, also,* 11 McQuillin, Municipal Corporations (3rd ed 1977) § 33.78; *Bitney v. Grim,* 73 Or 257, 144 P 490 (1914). There was no evidence that such an affirmative act occurred here, as opposed to mere acquiescence by the county in any misuse. *Cf. City of Molalla v. Coover et ux., supra.*

Defendant's final argument is that the county is equitably estopped to claim title or to deny defendant's title. The alleged factual predicates for this assertion are the county's and school district's leading defendant to believe that they would not contest defendant's continued possession and the defendant's expenditures for the improvement and maintenance of the building.

The acts of the school district do not assist defendant's argument. The county rather than the school district was the responsible public body. *Cf. Jaquith v. Hartley,* 243 Or 27, 411 P2d 274 (1966). Oregon case authority *can* be understood as supporting the proposition that a governmental body will be estopped to claim a right to dedicated property if there has been an

[745]

affirmative act by the governmental body which induces a private party to believe that the governmental body has abandoned the property or consented to its private use, with the result that the private party would suffer substantial harm were the governmental body not estopped. *Dabney v. City of Portland*, 124 Or 54, 263 P 386 (1928); *City of Molalla v. Coover et ux., supra.* Here, the evidence shows no affirmative act by the county; at the most, the evidence shows acquiescence, which is not sufficient to give rise to estoppel. *City of Molalla v. Coover et ux., supra.* The evidence also shows no substantial harm. The cost of the improvements and maintenance over the 35 year period the defendant has had the use of the property were not shown to be more than the rental value for comparable space or to have exceeded the value of defendant's own use.

Affirmed.