## CITY OF SALEM,
a municipal corporation,
*Appellant,*

*v.*

## Vincent Grover FURLOTT
and Marie Alma Furlott, trustees,
*Respondents.*

(95C-11685; CA A94788)

942 P2d 872

Stephanie Smythe argued the cause and filed the briefs for appellant.

Robert J. Thorbeck argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

The City of Salem brought an action seeking a mandatory injunction against defendants to require them to remove a portion of a building encroaching on Sunnyside Road. Defendants asserted two affirmative defenses: estoppel by abandonment and equitable estoppel. After a trial on the merits, the trial court found in favor of defendants. We review *de novo*,[1] ORS 19.125(3), and reverse.

The facts of this case are essentially not in dispute. In 1974, defendants purchased the subject property from its previous owners for use as a furniture repair and refinishing shop. The previous owners used the property as an automotive repair garage, a nonconforming use for the commercial office zoning ordinance that regulated the use of the property. Defendants applied for a zone change, which the City denied. Defendants then sought a conditional use variance and permission to enlarge the building on the property. As part of the application, defendants submitted a plot plan that incorrectly showed that the building was 20 feet from Sunnyside Road. The City published a notice of hearing on the request for variance that contained a map that reiterated the incorrect information.

During the variance application process, the City inspected the property and prepared a report. The City's report determined that the building was located approximately two feet outside the City's right-of-way for Sunnyside Road. The conclusion was based on a visual examination of the location of the utilities in the area and the distance of the building from the paved portion of the street as it then existed.

Based on the report, the City granted the variance that permitted a change in use but denied the proposed addition to the building because it was thought to be illegal to enlarge an existing nonconforming use. Defendants then

---

[1] Defendants claim that the City's complaint sets forth a claim for ejectment, which is an action at law, and, thus, that the standard of review is for errors substantially affecting the rights of the party. ORS 19.125(2). However, the City's complaint is for a mandatory injunction, which is an equitable claim. Thus, our review is *de novo*.

applied for a building permit to remodel the building. The City inspected the building, and, on the inspection record checklist, a city representative wrote an "ok" next to the words "Building Setbacks." The setback requirement for Sunnyside Road is 40 feet from the center line. Because the City's setback requirements are for new buildings only, the setback requirement was not an issue for issuance of the building permit to remodel the existing building.

In 1995, the City surveyed Sunnyside Road as part of a street widening project. It discovered for the first time that defendants' building was located partially within the dedicated right-of-way. The northerly corner of the building is 7.2 feet within the right-of-way, and the southerly corner of the building is 5.7 feet within the right-of-way. The City then began this action for a mandatory injunction to compel defendants to remove the portion of the building that encroaches on the City's property.

The trial court found:

"4)   The Defendants were induced to believe that the City had either abandoned its right-of-way or had consented to Defendants' private use of the City's right-of-way by virtue of the City's affirmative acts.

"5)   The City performed the following 'affirmative acts':

"a)   The City published a staff report declaring Defendants' building to be two feet inside his property line.

"b)   The City published a notice of public hearing indicating Defendants' building to be 20 feet from the pavement after staff personally went to the site and inspected the building and its relationship to streets and other properties.

"c)   The City adopted the 'two feet' reference in its ORDER granting the variance.

"d)   The City inspected and approved the setback of Defendants' building.

"e)   The City denied Defendants' request to tear down and rebuild the building and insisted Defendants remodel the existing structure.

"6) Defendants acted in reliance upon the City's 'affirmative acts.'

"7) * * * Defendants [would] suffer substantial harm unless the City is estopped from claiming its right-of-way because to eject the portion of Defendants' building which encroaches on the City's right-of-way would render the building useless and nonusable either for defendants' furniture re-finishing and repair business or for rental income to supplement Defendants' social security."

Based on these findings, the trial court dismissed the City's claim for a mandatory injunction.

The City argues that there is no estoppel in this case because there is no evidence that it had knowledge that defendants' building was ever located in the right-of-way before it undertook its 1995 survey. The City contends that in 1974, when defendants applied for the variance, there was a mutual mistake as to the location of the building and that a mutual mistake cannot result in a forfeiture of a public right-of-way. Defendants focus on the affirmative acts by the City when it determined that the building was located two feet outside the right-of-way and approved the setback and the request for a variance. They conclude that the City is now estopped from taking a different position as to the boundaries of the street right-of-way.

■    In *Douglas County v. Umpqua Valley Grange*, 45 Or App 739, 609 P2d 415 (1980), we analyzed when it is appropriate to use the doctrine of equitable estoppel against a municipality. We said:

"Oregon case authority can be understood as supporting the proposition that a governmental body will be estopped to claim a right to dedicated property if there has been an affirmative act by the governmental body which induces a private party to believe that the governmental body has abandoned the property or consented to its private use, with the result that the private party would suffer substantial harm were the governmental body not estopped. *Dabney v. City of Portland*, 124 Or 54, 263 P 386 (1928); *City of Molalla v. Coover et ux.*, [192 Or 233, 235 P2d 142 (1951)]." *Id.* at 745-46. (Emphasis in original.)

■ Estoppel, in part, focuses on the knowledge of the governmental body. In *Sweet et al. v. Irrigation Canal Co.*, 198 Or 166, 199-200, 254 P2d 700, 256 P2d 252 (1953), the court said, "[T]here can be no estoppel where the knowledge of both parties is equal and nothing is done by the one to mislead the other." Thus, the concept of estoppel contemplates that the party who is estopped knows the truth of matter and misleads the other party. In this case, neither party had knowledge of the correct boundary of the street until 1995 when the City demanded that the building be removed. Both the City and defendants believed that the building was located only on defendants' property before that time. Thus, defendants' affirmative defenses fail for lack of evidence that the City knew about the encroachment in 1974-75.

Reversed and remanded for entry of judgment in favor of the City.