244 September 4, 2025 No. 793

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

HAYSTACK ROCK, LLC,
a Delaware limited liability company,
*Plaintiff-Appellant,*

*v.*

Rebecca ROBERTS,
an individual; Stanley Roberts, an individual;
and City of Cannon Beach, a municipality,
*Defendants-Respondents.*

Clatsop County Circuit Court
22CV07199; A182356

Kirk C. Wintermute, Judge.

Argued and submitted May 12, 2025.

Iván Resendiz Gutierrez argued the cause for appellant. Also the briefs were William L. Rasmussen, Steven G. Liday, John C. Clarke, and Miller Nash LLP.

Joseph L. Franco argued the cause for respondent. Also on the brief were J. Matthew Donohue, Sarah Molinoff, and Holland & Knight LLP.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

This case involves a dispute between neighboring landowners regarding the City of Cannon Beach's authority to grant private property owners an easement to build a driveway on a public right-of-way. Plaintiff Haystack Rock, LLC, and defendants Rebecca and Stanley Roberts own adjacent properties on a hillside in Cannon Beach. Running in front of both properties is Nenana Avenue, an undeveloped path that was dedicated as a public avenue in 1908. The City is considering granting the Robertses an easement to build a driveway on Nenana Avenue to access their property. Plaintiff disputes the City's authority to do so and brought this declaratory relief action. On cross-motions for summary judgment, the trial court granted summary judgment for the Robertses and denied it for plaintiff, concluding that the City holds fee title to Nenana Avenue as a result of the 1908 dedication and therefore has authority to grant an easement to the Robertses so long as it does not interfere with public use. Plaintiff appeals the resulting judgment. For the reasons that follow, we reverse and remand.

## FACTS

"On review of cross-motions for summary judgment, we view the record for each motion in the light most favorable to the party opposing it to determine whether there is a genuine issue of material fact and, if not, whether either party is entitled to judgment as a matter of law." *O'Kain v. Landress*, 299 Or App 417, 419, 450 P3d 508 (2019). The parties agree that there is no dispute here as to the historical facts.

In 1908, M. S. Warren filed a plat for a development that he called Tolovana Park. The plat provided for the division of a large property into five sections and each section into multiple lots. Between each section runs a named avenue. One of those avenues is Nenana Avenue, which runs between the first and second sections. The plat states, "I hereby dedicate to the public for its use as thoroughfares forever, the streets and avenues therein." The following is an excerpt from the plat:



In 1911, Warren sold all of the property in the first section of Tolovana Park to Oswald West (then governor of the State of Oregon), except lot 13. The recorded deed from Warren to West referenced the filed plat:

"KNOW ALL MEN BY THESE PRESENTS, that I, M. S. Warren married man and Edra Warren his wife of the county of Clatsop, state of Oregon, in consideration of Fifteen Hundred ($1500.00) Dollars to me paid by Oswald West of the county of Marion, state of Oregon have bargained and sold and by these presents do grant, bargain, sell and convey unto said Oswald West his heirs and assigns all of the following bounried [*sic*] and described real property, situated in the county of Clatsop and state of Oregon Lots numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, and 22 all in Block numbered One (1) in Tolovana Park *as laid out and recorded by M. S. Warren*[.]"

(Emphasis added.)

Rolling forward one hundred plus years, plaintiff is the current owner of lots 8, 9, 10, 11, 12, 14, and 15 in the first section of the Tolovana Park development. The Robertses are the current owners of lot 13 in the same section. The City is the current owner of property in the second section of the Tolovana Park development, which lies directly across Nenana Avenue from plaintiff's and the Robertses' properties. All of the properties lie west of Hemlock Street, which is the closest public road.



Currently, the part of Nenana Avenue abutting the parties' lots is an undeveloped path on a steep and vegetated hillside. It is accessible only by pedestrians.

The Robertses' property, lot 13, is an undeveloped hillside lot. The Robertses have been trying to get approval to build a house there for a number of years. The City denied their first permit application in 2020, based on the plans violating ocean setback requirements. *Roberts v. City of Cannon Beach*, 316 Or App 305, 504 P3d 1249 (2021), *rev den*, 370 Or 56 (2022) (affirming the Land Use Board of Appeals order upholding the City's denial). The Robertses submitted a second permit application in 2021, proposing a smaller house to comply with the ocean setback requirements. At the same time, the Robertses submitted a right-of-way application for a proposed "private driveway" to provide vehicular access

from Hemlock Street. The City took the position that it could not approve the right-of-way application unless the City granted the Robertses a private access easement over Nenana Avenue. The issue was discussed at several City Council meetings. The Robertses initially disagreed that an easement was necessary but acceded to the City's position. Plaintiff objected to any easement, asserting that the City did not hold fee to the property and could not grant an easement. The City Council agreed to table the issue while plaintiff sought an answer from the courts.

Plaintiff then filed this declaratory judgment action, requesting declarations that (1) the City may not grant the requested easement; and (2) the Nenana Avenue right-of-way may not be used other than as a public thoroughfare. We understand the "requested easement" to mean the easement described in a proposed "Driveway Access Easement Agreement" in the summary judgment record. That unsigned agreement recites that the City owns Nenana Avenue, recites that the Robertses have requested an easement for a driveway to access their property, and provides in relevant part:

- The real property at issue is the portion of Nenana Avenue lying west of Hemlock Street, which is described as "West Nenana Avenue."

- The Robertses are granted a "nonexclusive easement" over and across West Nenana Avenue, "solely for the purpose of the construction and use of the Driveway to provide vehicular, bicycle, and pedestrian access from Hemlock Street to the Roberts Property."

- The driveway must be constructed in accordance with plans and specifications approved by the City. It "shall be as close to the existing grade as possible." Its design and construction "shall not prevent or interfere with the potential future opening of West Nenana Avenue to public access."

- All construction costs for the driveway will be paid by the Robertses. The Robertses also are responsible to maintain the driveway and keep it in good repair.

- The Robertses are not to place any gate or signage on the completed driveway, unless the City determines that it is necessary, in which case the Robertses will pay for a gate and/or a sign "For Private Driveway Access Purposes Only."

- Other abutting property owners "shall have free and unencumbered access" to West Nenana Avenue, including the driveway.

- The Robertses acknowledge that West Nenana Avenue is a dedicated right-of-way that the City manages for the public. The City may allow public access to and along West Nenana Avenue for pedestrian, bicycle, and other access.

- The term of the easement is "perpetual." However, the City reserves the right at any time to construct and maintain a city street on Nenana Avenue, in which case the Robertses shall remove some or all of the driveway as requested by the City.

- The easement runs with the land. It benefits and binds the Robertses and the City and their respective heirs, successors and assigns, etc.

The parties cross-moved for summary judgment. Plaintiff asserted in its motion that it was entitled to its requested declarations. The Robertses asserted in their motion that they were entitled to declarations that (1) the City owns the fee underlying Nenana Avenue and may grant easements over it, and (2) the proposed easement is consistent with the dedicated use of Nenana Avenue as a public thoroughfare.

In deciding the motions, the trial court first addressed the issue of ownership of Nenana Avenue. Relying on *Landis v. Limbaugh*, 282 Or App 284, 385 P3d 1139 (2016), *rev dismissed*, 361 Or 351 (2017), it concluded that the 1908 plat transferred fee ownership of Nenana Avenue to the City. The court stated, "Under the totality of the circumstances, and under the *Landis/RealVest* factors, it appears that the Tolovana Park dedication granted a fee interest to the public, via the City of Cannon Beach, not simply an easement for use as a thoroughfare." As fee owner, the court

continued, the City "can grant appropriate easements over that land, so long as such easements do not run afoul of use of Nenana Avenue as a public thoroughfare."

The court next addressed whether the proposed easement interfered with use of Nenana Avenue as a public thoroughfare, and it concluded it did not. The court emphasized that its decision was based solely on the proposed easement agreement, not any specific driveway design, as design was a separate issue that would be subject to City approval. The court viewed itself as "tasked only with determining whether the terms of the easement are appropriate, not whether specific designs should be granted."[1] As for the proposed easement, the court reasoned that the agreement's terms "give sufficient protection for the use of the property as a public thoroughfare" in accordance with the 1908 grant. The court pointed to terms requiring the driveway to be constructed as close to the existing grade as possible, requiring that it to be designed and constructed so as not to prevent or interfere with potential future opening of Nenana Avenue to public access, barring exclusionary gates or signage without city approval, granting the City access at all times, guaranteeing access for abutting property owners, acknowledging that the City may allow public access at any time, and reserving to the City the right to construct a city street and require removal of some or all of the Robertses' driveway in that event. Lastly, the court noted that, because Nenana Avenue is currently unimproved and passable only by pedestrians, the Robertses' driveway, if properly designed, "may actually increase public access to the property and adjacent properties, and any improvements to the roadway or grade may be used for public access in the future."

Based on the foregoing reasoning, the trial court granted the Robertses' motion for summary judgment, and it denied plaintiff's motion. The court entered a general judgment containing declarations that (1) the City owns the fee underlying Nenana Avenue and may grant easements over Nenana Avenue, so long as they do not run afoul of its

---

[1] Plaintiff is particularly concerned that the Robertses want to build an "elevated" driveway to accommodate the terrain, which plaintiff views as inherently incompatible with a public thoroughfare.

use as a public thoroughfare, and (2) the proposed driveway easement to the Robertses is consistent with the use of Nenana Avenue as a public thoroughfare.

Plaintiff appeals, challenging the summary judgment rulings.

OWNERSHIP OF NENANA AVENUE

The first question before us is who owns Nenana Avenue. Did the 1908 plat transfer fee ownership to the City, as the trial court concluded, or did fee remain with the grantor and his successors, as plaintiff argues? We begin our discussion with an overview of key principles from the case law on common law dedication.[2]

A dedication is "an appropriation of land by the owner for public use." *Security & Invest. Co. v. Oregon City*, 161 Or 421, 432, 90 P2d 467 (1939). A dedication may be express or implied, but the owner's intention to dedicate the land to the public must be "clearly and unequivocally manifested." *Harris v. City of St. Helens*, 72 Or 377, 388, 143 P 941 (1914) (emphasis omitted). Land may be expressly dedicated by the filing of a plat. *Id.* If the public accepts a dedication, the dedication becomes irrevocable—and, "[i]n Oregon, * * * a dedication to the public is impliedly accepted when * * * lots are sold with reference to a plat which shows the dedication." *Douglas County v. Umpqua Valley Grange*, 45 Or App 739, 742-43, 609 P2d 415 (1980). Further, upon acceptance of the dedication, "the governing body of a county or municipality becomes the trustee for the public to assure that the land is used for the dedicated purpose or purposes." *Id.* at 743. *But see Esquire Investments, Inc. v. Firestone*, 341 Or App 510, 514-15, ___ P3d ___ (2025) (recognizing that, in some cases, a dedication may be accepted by the public, but not by the county or city, as relevant to maintenance responsibilities).

The actual ownership of the dedicated land remains with the dedicator, however, under longstanding case law.

---

[2] The parties' arguments and the trial court's ruling are all tied to common law dedication. The parties do not discuss, and we do not address, the dedication statute. *See* The Codes and Statutes of Oregon, title V, ch I, §§ 2736-38 (Bellinger & Cotton 1901) (dedication statute in effect in 1908); *Dayton v. Jordan*, 279 Or App 737, 746 n 1, 381 P3d 1031 (2016) (declining to address statutory dedication where the parties did not).

*See, e.g.*, *Carter v. City of Portland*, 4 Or 339, 348 (1873) (the owner of property dedicated to the public "has the naked fee" but "has no right whatever to interfere with the premises"); *see also* Sheldon W. Parks, *The Law of Dedication in Oregon*, 20 Or L Rev 111, 114 (1941) ("[T]he purpose and effect of a common-law dedication is to create a right of user in the public in the nature of an easement, with the fee of the land remaining in the owner."). Once platted lots are sold, each owner of a lot abutting a dedicated public street owns to the center of the street, subject to the public easement. *Miller v. Roy W. Heinrich & Co.*, 257 Or 155, 157, 476 P2d 183 (1970) ("When the dedicator sells the land abutting the street, the abutting owners own to the center of the street subject to the public easement."); *Kurtz v. Southern Pacific Co.*, 80 Or 213, 216-17, 155 P 367, *reh'g den*, 80 Or 213, 156 P 794 (1916) ("[N]otwithstanding the dedication of a city street, the title in fee to the highway remains in the dedicator until it passes by a conveyance of a lot, when the grantee takes and holds the title to the middle of the street upon which the land abuts, subject, however, to the public easement therein.").

The Robertses argue that, notwithstanding those well-established principles, our 2016 decision in *Landis* dictates a different result. In *Landis*, the plaintiff was jogging on a sidewalk in Washington County when she tripped on a pitched section and was injured. 282 Or App at 286. She brought a negligence action against the county and others. *Id*. The trial court granted summary judgment for the county on recreational immunity grounds. *Id*. On appeal, the county defended that ruling and also proposed as an alternative basis to affirm that it did not own fee to the land, because the public dedication had given it only an easement. *Id*. at 287. We were unpersuaded in both regards, concluding that the recreational immunity ruling was in error and also rejecting the alternative basis to affirm. *Id*.

As to the latter, we explained that, in 1992, by a recorded deed titled "dedication deed and temporary construction easement," the then-owner of the property had "grant[ed] to Washington County * * *, for the use of the public as a public way forever, all that certain real property situated in the County of Washington and State of Oregon, shown on

[an attached exhibit] and being more particularly described [in the deed]." *Id.* at 297-98 (some brackets in original). We interpreted that deed as intended to convey fee, not just an easement, to the county. *Id.* at 298. Regarding the "dedication" reference in the document title, we noted that "[a] dedication may, but does not necessarily, indicate the creation of an easement." *Id.* at 299. Based on the body of the deed, we concluded that, notwithstanding the "dedication" reference in the document title, the grantor's actual intent was to convey fee to the county. *Id.* at 298. We viewed the deed as similar to the deed in *RealVest Corp. v. Lane County*, 196 Or App 109, 100 P3d 1109 (2004). *Landis*, 282 Or App at 298.

In *RealVest*, as part of resolving a larger issue, we interpreted a 1946 warranty deed that did "hereby grant, bargain, sell and convey" to Lane County "all the following real property * * * described as follows, to wit: All that portion of an 80 foot right-of-way * * *." 196 Or App at 116 (emphasis omitted). We acknowledged existing Supreme Court case law regarding the meaning of "right-of-way": "'In common parlance the term "right of way" signifies an easement. In the absence of special circumstances indicating a contrary meaning, the courts have generally construed the term in accordance with common usage.'" *Id.* (quoting *Cappelli v. Justice*, 262 Or 120, 128-29, 496 P2d 209 (1972)). At the same time, we recognized our overriding obligation to determine the particular grantor's intent in executing a particular deed. *Id.* at 117. Examining the 1946 deed, we were ultimately persuaded that it was intended to convey fee to the property, not an easement. *Id.* at 118. We explained, "[T]he l anguage of the deed as a whole indicates that it is more likely that the words 'right of way' are surplusage and refer to the purpose for which the land conveyed will be used by the grantee rather than as a limitation by the grantor on the nature of the estate conveyed." *Id.* (footnote omitted).

In *Landis*, we observed that all of the considerations that led us to our conclusion in *RealVest* were also present in *Landis*. *Landis*, 282 Or App at 298. First, the conveyance was to a public body for a public right-of-way—a deed to Lane County in *RealVest* and a deed to Washington County in *Landis*. *Id.* Second, the deed used inclusive language—the

deed in *RealVest* granted to the county "all the following real property" and "all that portion" of the property, and the deed in *Landis* granted to the county "all that certain real property." *Id.* Finally, neither deed used the word "easement" or otherwise "purport[ed] to limit the nature of the estate being conveyed, with the possible exception of the use of the words 'right of way.'" *Id.*; *see RealVest*, 196 Or App at 117 (discussing those as a single factor). All those similarities led us to conclude that the 1992 deed was intended to transfer—and did transfer—fee to the sidewalk property to the county. *Landis*, 282 Or App at 298.

Returning to this case, the Robertses successfully argued on summary judgment that, under *Landis*, the 1908 plat was intended to transfer fee ownership, not an easement.[3] The Robertses maintain that position on appeal. We are unpersuaded, as this case is distinguishable from *Landis* in numerous regards.

This case involves a plat, not a deed. *See* Parks, 20 Or L Rev at 114-15 ("Since dedication is in favor of the public generally, it would seem that a true dedication could not be made by deed because there would be no grantee *in esse* capable of taking legal title. Moreover the theory of dedication seems to rest more upon a divestment of the owner of the use of his property than upon any transfer of an interest in his property to the public as a grantee."). There is no specific grantee named for the dedicated avenues. *See* Herbert Thorndike Tiffany, 4 *Tiffany Real Prop* § 1099 (3d ed 2024) ("The purpose and effect of a common law dedication is to create a right of user in the public, or at least in some particular class of the public and not in some particular person or persons, natural or legal. And for this reason, not only is a particular grantee or beneficiary unnecessary, but there is, it seems, no dedication when there is a particular grantee or beneficiary."); Parks, 20 Or L Rev at 117 ("[T]he beneficiaries of a dedication are, generally speaking, the whole public, a class which, of necessity, is indefinite."). Nor does the plat use so-called "inclusive" language. *See Landis*,

---

[3] The City of Cannon Beach was not incorporated until 1957, which raises some additional issues over which the parties argue. Given our disposition, we need not get into those issues here.

282 Or App at 298 (describing "all the following real property," "all that portion," and "all that certain real property" as "inclusive" language). Instead, the plat uses classic dedication language—"I hereby dedicate to the public for its use as thoroughfares forever, the streets and avenues therein."

The plat does not contain the word "easement," but, on its own, that does not tell us much, as many plat dedications do not use that specific word and still create an easement. *See, e.g.*, *Spencer v. Peterson*, 41 Or 257, 259, 68 P 519, *reh'g den*, 41 Or 257, 68 P 1108 (1902) (although "the 'dedication' does not in express terms grant an easement in the roads, \* \* \* we think the proprietors intended thereby to dedicate them to the use of the public; for the rule is well settled that when an owner of real property lays out a town upon it, and divides the land into lots and blocks, with streets and alleys between, and sells any of the lots reference to such plan, he thereby irrevocably dedicates the streets and alleys to the use of the public"); *McCoy v. Thompson*, 84 Or 141, 149, 164 P 589 (1917) ("The plat and writing clearly manifest an intention on the part of [the landowner] to dedicate the disputed land as a street; and, indeed, the 40-foot strip appears upon the plat in such a manner as to be entirely inconsistent with any other theory."). With it being a plat rather than a deed, the absence of the term "easement" or other limiting language does not carry the same significance.

We therefore disagree that this situation is analogous to that in *Landis*. Rather, we view it as squarely controlled by longstanding Supreme Court case law regarding who holds fee title to property dedicated for a public thoroughfare, which we have already described. *Landis* did not purport to overrule that case law—nor could it—but was instead decided on its particular facts, which, for the reasons explained, are not comparable to the facts of this case.

On this record, as a matter of law, plaintiff owns to the center of Nenana Avenue in front of lots 14 and 15, the Robertses own to the center of Nenana Avenue in front of lot 13, and the City owns to the center of Nenana Avenue in front of its lot.[4] The trial court therefore erred in ruling on

---

[4] As part of their summary judgment motion, the Robertses sought summary judgment on their affirmative defense of waiver. The trial court did not reach

summary judgment, and consequently declaring, that the City is the fee owner of Nenana Avenue. The City holds fee in only part of the avenue, and it does so as an abutting landowner, not due to a fee transfer in the 1908 plat.

## OTHER AUTHORITY TO GRANT EASEMENT

Having concluded that the abutting landowners hold fee to Nenana Avenue, we next consider the Robertses' arguments that, even if the City does not hold fee, it still has authority under the Cannon Beach Municipal Code (CBMC) and ORS 271.310 to grant the requested easement. Those arguments were made in the Robertses' summary judgment motion, so they are properly before us, even though the trial court did not reach them.[5] *Sherertz v. Brownstein Rask*, 314 Or App 331, 341 & n 8, 498 P3d 850 (2021), *rev den*, 369 Or 338 (2022). Ultimately, we find neither argument persuasive.

CBMC 12.36.014 provides:

"The city has jurisdiction and exercises regulatory control over each public right-of-way whether the city has a fee, easement, or other legal interest in the right-of-way. The city has jurisdiction and regulatory control over each right-of-way whether the legal interest in the right-of-way was obtained by grant, dedication, prescription, reservation, condemnation, annexation, foreclosure or other means."

---

that issue. The Robertses raise it again on appeal, framing it as an alternative basis to affirm the summary judgment in their favor. The gist of their argument is that plaintiff lost any fee interest in Nenana Avenue by failing to assert it in the early 2000s. At that time, the City asked plaintiff for an easement allowing the City to place dewatering pipes under parts of lots 14 and 15, and plaintiff agreed, without saying anything about the City also needing one to place pipes under Nenana Avenue. Waiver is the "intentional relinquishment of a known right." *Ceaser v. Dept. of Human Services*, 311 Or App 702, 710, 493 P3d 66 (2021) (internal quotation marks omitted). We agree with plaintiff that silently allowing the City to place dewatering pipes under Nenana Avenue as part of a City project to stabilize the hillside—which the City almost certainly had authority to do in any event, as trustee of the public easement—did not constitute a waiver of any fee claim to the avenue.

[5] We do not consider any issues that were not raised below. For example, the Robertses suggest on appeal that the City could have some other authority to grant them an easement, even if it lacks authority as the fee owner or under CBMC 12.36.014 or ORS 271.310. Summary judgment cannot be granted on a basis that was not raised below. *See Adelsperger v. Elkside Development LLC*, 371 Or 61, 65, 529 P3d 230 (2023) ("The contours of summary judgment review are set by the operative complaint and the specific arguments for summary judgment advanced by a party.").

That provision simply recognizes the City's jurisdiction and regulatory authority over public rights-of-way. As relevant here, "regulatory" means "[r]esponsible for establishing and implementing rules for some activity; having the official power to control an activity and to ensure that it is carried out satisfactorily." *Black's Law Dictionary* 1540 (12th ed 2024). Such recognition is entirely consistent with the City's role as trustee of real property dedicated to the public for use as a thoroughfare, such as Nenana Avenue. *See Douglas County*, 45 Or App at 742-43 (as to accepted public dedications, "the governing body of a county or municipality becomes the trustee for the public to assure that the land is used for the dedicated purpose or purposes"). The code provision does not address in any way the transfer of property interests, however, let alone the transfer of public easements over which the City is trustee. The Robertses were not entitled to summary judgment based on CBMC 12.36.014.[6]

As for ORS 271.310(1), it provides, subject to certain exceptions:

> "[W]henever any political subdivision possesses or controls real property not needed for public use, or whenever the public interest may be furthered, a political subdivision may sell, exchange, convey or lease for any period not exceeding 99 years all or any part of the political subdivision's interest in the property to a governmental body or private individual or corporation. The consideration for the transfer or lease may be cash or real property, or both."

Although it is undisputed that the City controls Nenana Avenue in its role as trustee for the public, it does not follow that the City has a *property interest* in Nenana Avenue that may be sold, exchanged, conveyed, or leased to a public or private party, in exchange for payment in cash or real property or both. Nor is that the type of transaction at issue in this case. The Robertses' arguments regarding ORS 271.310(1) are minimally developed, but, based on those made, we are unpersuaded that that statute is relevant here. The Robertses were not entitled to summary judgment based on ORS 271.310(1).

---

[6] We note that the City opposed plaintiff's summary judgment motion, arguing that "as the owner of fee title in the City's streets and avenues, the City has the right to grant easements." The City did not take a position on CBMC 12.36.014.

Because the City does not hold fee in Nenana Avenue (except to the center of the avenue in front of its own property), and because neither CBMC 12.36.014 nor ORS 271.310(1) gives the City authority to grant an easement over Nenana Avenue to a private party, the trial court erred in ruling on summary judgment, and consequently declaring, that the City "may grant easements over Nenana Avenue."

CONSISTENCY WITH PUBLIC THOROUGHFARE

The last issue for consideration is the trial court's summary judgment ruling, and resulting declaration, that the proposed driveway easement to the Robertses is consistent with the use of Nenana Avenue as a public thoroughfare. We understand the court to have reached that issue only because it had concluded that the City, as fee owner of Nenana Avenue, had authority to grant easements. Given our conclusion that the City is not the fee owner, and our rejection of the Robertses' alternative arguments as to the City's authority to grant easements, we need not address whether the particular proposed easement is consistent with the public dedication.

CONCLUSION

The trial court erred in ruling on summary judgment, and consequently declaring, that (1) the City owns the fee underlying Nenana Avenue and may grant easements over Nenana Avenue, so long as they do not run afoul of its use as a public thoroughfare, and (2) the proposed driveway easement to the Robertses is consistent with the use of Nenana Avenue as a public thoroughfare. Accordingly, we reverse the grant of summary judgment for the Robertses and the denial of summary judgment for plaintiff, and we remand for further proceedings consistent with this opinion. In doing so, we emphasize the narrow issue presented on summary judgment. The question is not whether the City has authority in its capacity as trustee of the public easement to allow the Roberts to pay for the cost of improving Nenana Avenue in a manner consistent with it being a public thoroughfare. The only question is whether the City has authority to grant an *easement* to the Robertses, which we answer in the negative.

Reversed and remanded.